## ROBERTSON *against* SMITH and others.

This was an action of assumpsit against the defendants, on two promissory notes, made by "*Soulden, Smith, & Co.*" One note was dated the 10th of *July*, 1818, for 1,983 dollars and 83 cents, payable to the plaintiff or bearer, the one half in three, and the remainder in four months from the date. The other note was dated the 19th of *September*, 1817, for 249 dollars and 75 cents, payable twelve months after date, to the plaintiff, or order, at the *Manhattan Branch Bank* in *Utica*. The plaintiff, before the commencement of the present suit, recovered judgment on each of these notes against *Peter Sken Smith*, and *William Soulden*, the ostensible partners, under the firm of "*Soulden, Smith & Co.*" In his declarations in those suits, he averred them to be partners in trade, and that the notes were made by them in their copartnership name and firm. Not having obtained satisfaction of the judgments; and supposing that *Peter Smith* and *Abraham Van Santvoord*, were, also, partners under the said firm, he brought the present suit against the four defendants. *Peter Smith* was the only one arrested on the *capias ad respondendum*, and he appeared, and pleaded specially.

*Joint debtors must be jointly sued. If all of them are not sued, it can only be pleaded in abatement. In a suit against joint debtors, a joint and subsisting indebtedness in all the defendants, must be shown. And, in assumpsit, it is necessary to show a subsisting liability on the part of all the defendants, except in cases of infancy, death, or discharge of either of them under a bankrupt or insolvent act. Where, in respect of any of the defendants, the right of action is gone, or suspended, their joint liability being at an end, the other defendants may avail themselves of this suspension, or discharge, whether it be produced by the act of the party, or by the operation of law, at the instance, and by the agency of the plaintiff.*

Thus, where the plaintiff brought an action of *assumpsit* against S. and S., as partners, under the firm of S. and S. & Co., and makers of a promissory note, and recovered a judgment, which was unsatisfied; and, afterwards, discovering that P. & V. were, also, partners in the firm at the time the note was given, he brought an action against the four, as makers of the same note; *Held*, that the judgment recovered against two of the defendants, on the note, was a bar to the subsequent suit against the four defendants, for the same cause of action.

A case was made, by consent, subject to the opinion of the Court, on the following question : Can the plaintiff, notwithstanding the judgments already obtained, maintain this action on the same notes, admitting that all the now defendants were partners in the said firm when the notes were made ? If the Court should be of opinion, that the plaintiff cannot sustain this action, then a judgment of nonsuit is to be entered against him ; but if the Court should be of opinion, that the plaintiff can maintain the action, then the defendants shall withdraw the second and third pleas in this cause, and pay the costs of this case ; the other costs to abide the event of the suit.

P. A. Jay, for the plaintiff. In Rice v. Shute, (5 Burr Rep. 2611.) Lord Mansfield lays it down, that " all contracts with partners are joint and several; every partner is liable to pay the whole. In what proportion the others should contribute, is a matter merely among themselves." This has been frequently recognized since as the settled doctrine. (Watson Partn. 436.) In Tooker v. Bennet and Brower, (3 Caines' Rep. 4.) Livingston, J. says, " a joint debt is the debt of each, as well as of all the partners." In Brown v. Belches, (1 Wash. Rep. 9.) the suit in the Court below was against Brown and Eaton, but Eaton not being found, the suit, as to him, according to the law of Virginia, abated, and the judgment was against Brown alone. The objection was raised in the Court of Appeals, that this being a partnership debt, judgment could not be entered against one partner only ; but the Court decided, that since the case of Rice v. Shute, there was no distinction between torts and contracts, and that one partner may be sued alone, and if the defendant would take advantage of that circumstance, he must plead it in abatement, and point out the other partners. In Hamersley v. Lambert and others, (2 Johns. Ch. Rep. 508.) the Chancellor said, that it was, in equity, a joint and several debt ; and he held, that where one partner dies, and the survivor becomes insolvent, the creditors of the firm may have recourse to the assets of the deceased partner. It is apparent, from the tenor of that case, that a judgment against a surviving partner, without satisfaction, so far from being an

impediment, would facilitate and strengthen the creditor's claim, as being evidence of due diligence. In *Rice* v. *Shute,* Lord *Mansfield* seems to take it for granted, that there may be *several* judgments against partners ; for, he observes, that the old rule of joining all of them, " must have been introduced originally from the semblance of convenience, that there might be *one* judgment against all who were liable to the plaintiff's demand. But, experience shows, that convenience, as well as justice, lies the other way." The act for the amendment of the law, (1 *N. R. L.* 521. sess. 36. c. 56. s. 13.) declares, that " all persons jointly indebted, &c. shall be answerable to their creditors separately, for such debts."

If, then, partnership contracts are joint and several, it must be the same, in effect, as if the defendants had said, " we, jointly and severally, promise to pay," &c. ; and then the case of *Ayrey* v. *Davenport,* (5 *Bos. & Pull.* 475.) is in point. That action was on a joint and several note, given by the defendant, and one *Barber.* Judgment, on a *cognovit,* was entered up against *Barber,* and part of the debt levied on a *fi. fa.* And *Mansfield,* Ch. J. says, " if an action be brought against *Barber,* and he suffer a judgment by default or confession, how can that discharge an action against the defendant ? The plaintiff has a right to sue every one of the makers of the note to judgment ; though, it is true, that he cannot have satisfaction more than once. And whether the judgment against *Barber* were obtained by *cognovit,* or in any other way, can make no difference." In *Thomas* v. *Rumsey,* (6 *Johns. Rep.* 26.) which was an action for a libel, the defendant pleaded a judgment obtained against his partner for the same libel and *satisfaction* thereon. The plea, on demurrer, was held good, not on the ground of the prior judgment, but because it would be unjust that the plaintiff should have a *double* satisfaction. The Court intimated, that if the plaintiff had not accepted the damages in the first suit, he might have gone on to judgment in the second suit, and then elected *de melioribus damnis.* Even execution of the body, without valuable satisfaction, is no plea in bar, in the case of joint obligors. (*Blumfield's case,* 5 *Co.* 86.) In *Whiteacres* v. *Hamkinson,* (*Cro.*

ALBANY,
January, 1821.

ROBERTSON
v.
SMITH.

*Car.* 75.) the defendant pleaded, that one *J. Woodcock* was bound with him, jointly and severally, in the bond, and that the plaintiff recovered against *Woodcock*, and had him in execution on a *ca. sa.*, and the sheriff voluntarily permitted him to escape. On demurrer, the plea was held bad, "for, execution without satisfaction, was no bar." (*Cro. Jac.* 73. *Yelv.* 67. 1 *Johns. Rep.* 291. 3 *Mod.* 86. 2 *Shower,* 494. 1 *N. R. L.* 521.) Had the defendant, *P. S.*, pleaded, that the plaintiff had not only recovered judgment against *S. & S.*, but had also obtained *satisfaction*, the plea, beyond all question, would have been a good bar. But how can a barren judgment, which does not affect the defendant, or vary his rights, in any degree, have the effect to bar the plaintiff's action? In principle, there is no difference between a bond and a note; yet, in Sir *Anthony Mildmay's case*, (6 *Co. Rep.* 40.) it is said, that "if two are jointly and severally bound in a bond, and a judgment is given against one, by which it is become of record as to one, but as to the other, it remains a writing as it was before." So, in *Higgen's case*, (6 *Co.* 45.) it is laid down, that in such a case, "the nature of the bond is not so changed by the recovery, but he may, on the same bond, have an action against the other." In *Drake* v. *Mitchell and others*, (3 *East*, 257:) there was a *joint* covenant for the payment of rent, and the plaintiff took a note, or bill of exchange, of one of the covenantors, in payment of one of the instalments of the rent, on which he brought a suit, and obtained judgment; yet the Court of K. B. held, that this judgment was no bar to an action against all the covenantors, for the very same instalment of rent. In *Watts* v. *Goodman*, (*Lord Raym.* 1460.) the action was against one obligor, on a joint bond, and he pleaded the non-joinder of his co-obligor, in bar of the action. The Court overruled the plea, without the least intimation that the whole contract would be extinguished by the judgment. Nor is any such intimation to be found in the numerous cases of separate suits on joint contracts.

The whole argument on the part of the defendant, rests on a supposed analogy to the technical rule, that taking the bond of one partner, is an extinguishment of the partner-

ship contract. A bond is a contract of a higher order, and merges the simple contract; but a judgment is no contract at all, for a contract is founded on mutual assent, but *judicium redditum est in invitum.* (*Bidleson* v. *Whytel*, 3 *Burr*, 1545. 1548.) It can never be supposed, that the plaintiff intended, by suing *S. & S.*, the ostensible partners, to discharge the other secret partners. " The most desirable object, says Lord *Mansfield*, (4 *Burr*. 2239.) " in all judicial determinations, especially in *mercantile* ones, (which ought to be determined on actual justice, and not on the niceties of the law) is to do *substantial justice.*" This is, undoubtedly, a wise maxim, and furnishes, perhaps, one of the reasons on which the doctrine of extinguishment, as applied to judgments, is founded, that *nemo bis vexari debet pro eadem causa.* But the defendant, *P. S.*, has never been sued before. As regards him, the judgment against *S. & S.* is *res inter alios acta.* It, in no manner whatsoever, affects his person or property. As to the reason of this doctrine of extinguishment, that the time of courts of justice ought not to be wasted in the repeated discussion of the same question, between the same parties, it does not apply to this case; for the parties are not the same, and the question is different. But there is a decision on this very point, by the highest judicial authority known in our laws, and which puts the question at rest. In *Sheehy* v. *Mandeville & Jamesson*, (6 *Cranch's Rep.* 253.) the declaration in the first suit was on a promissory note made and subscribed by the defendant, under the name and firm of *Robert B. Jamesson.* In the suit brought before the Supreme Court of the *United States*, the defendant *Mandeville*, who alone appeared, pleaded a judgment recovered against *Jamesson* on the same note, and insisted, that the contract was thereby extinguished. The plaintiff demurred to the plea. Ch. J. *Marshall*, in delivering the opinion of the Court, says, " were it admitted that this judgment bars an action against *R. B. J.*, the inquiry still remains, if *M.* was originally bound, if a suit could originally be maintained against him, is the note, as to him, also merged in the judgment? Had the action in which the judgment was obtained against *J.*, been brought against the firm, the whole note would, most probably, have

ALBANY,
January, 1821.

ROBERTSON
v.
SMITH.

merged in that judgment. But that action was not brought against the firm. It was brought against *R. B. J.* singly, and whatever objections may be made to any subsequent proceedings on the same note, it cannot be correctly said, that it is carried into judgment, as respects *M.* If it were, the judgment ought, in some manner, to bind him, which, most certainly, it does not. The doctrine of merger (even admitting that a judgment against one of several joint obligors, would terminate the whole obligation, so that a distinct action could not, afterwards, be maintained against the others, *which is not admitted*) can be applied only to a case in which the original declaration was on a joint covenant, not to a case in which the declaration in the first suit was on a sole contract. In point of real justice, there can be no reason why an unsatisfied judgment against *J.*, should bar a claim upon *M.* : and it appears to the Court, that this claim is not barred by any technical rule of law, since the proceedings in the first action were instituted upon the *assumpsit* of *Jamesson* individually."

*Cady* and *Talcot*, contra, contended, that the notes were *joint* only, and that the whole contract was extinguished by the judgment recovered on the notes against two of the defendants jointly. That even admitting the notes to be joint and several, and the former judgment to be founded on the several assumpsit of the two who were sued, the contract on the notes was merged in the judgment, and the *joint* remedy on the notes severed and destroyed, by the plaintiff's election and act; and his only remedy, therefore, if any he had, must be on the several assumpsit of each of the other defendants. That the plaintiff, having brought an action against four, as joint debtors, was bound to show a joint contract, upon which all the defendants are now responsible, otherwise, he cannot recover against any of them. That although *P. S.* is the only defendant who has appeared and pleaded, he is entitled to show any thing which destroys the plaintiff's joint and several remedy on the notes, except such matter of defence as may be considered a personal privilege of the other defendants.

The contracts of partners are not joint and several, in the sense of the terms, as used by the opening counsel; nor was it in that sense that the terms were intended to be used by Lord *Mansfield* in *Rice* v. *Shute*, or by J. *Livingston* in *Tooker* v. *Bennet*. The only question before the court, in *Rice* v. *Shute*, was, whether, if one of two partners was sued alone, he could, on the trial, nonsuit the plaintiff, by showing that there was another person who ought to have been joined as defendant. It was decided that the defendant could take advantage of the non-joinder of his partner in no other way than by a plea in abatement. That was the only point adjudged. Lord *Mansfield* did not decide, that a note, beginning " we promise to pay," was " we promise, jointly and severally, to pay." He was dissatisfied with the old rule of the common law, which allowed a defendant, sued on a joint and several bond, or note, to take advantage of the non-joinder of his co-obligor, in any stage of the proceedings. When, therefore, he says, that all contracts with partners are joint and several, he means no more than that if one partner was sued, and did not plead the non-joinder of his co-partner in abatement, the contract should be considered so far several, that he should not, on the trial, be permitted to show that the contract was joint, in order to defeat the plaintiff's action. And when his lordship complains of the " many nonsuits, much vexation, and great inconveniences to justice," which the old rule had produced, he does not seem to take it for granted, that there may be several judgments against partners. He does not propose, as a remedy for the evils of the old rule, that the plaintiff may have as many actions as he pleases; but that the first partner sued, shall, by a plea in abatement, discover his co-partners, or that the judgment shall be against him for the whole, and he may settle the matter with his partners. One obligor can plead the non-joinder of his co-obligor only when the bond is joint, not when it is joint and several. The same rule applies to a promissory note. If a partner can plead the non-joinder of his co-partner in abatement, as Lord *Mansfield* admitted that he could, it demonstrates, that contracts made by partners are joint only, not joint and several, unless made several, also, in express terms.

Had his lordship been of opinion, that a contract by partners was so completely joint and several, that the plaintiff had a strict legal right, which could not be resisted, to commence, and prosecute to judgment, an action against each partner separately, he certainly would not have decided, that the defendant might plead the non-joinder of his co-partner in abatement.   There is no question, that the property and body of each partner, is liable for the whole debt; and so they are in all cases of a joint contract.   The *effect* of the judgment is several; but the case of *Rice* v. *Shute*, as well as every other case in the *English books*, shows that, as to the *mode* of obtaining judgment, the contract is joint, and not several.   If it were otherwise, the defendant could not plead the non-joinder of his co-partner, in abatement.   The contract of partners, as to this question, is exactly like any other joint contract.   That a contract made by partners does not comprise several and distinct contracts of each partner, in their individual capacities, as well as a joint contract of all, appears from the *form* of the plea in abatement.   The plea is, " that the said supposed promises, if any such were made, were made jointly with one *A. B.*, &c., and *not by the defendant alone.*"   Now, if a partnership contract necessarily comprises the several contract of each partner, such a plea would be an absurdity on the face of it.   And if the doctrine of the plaintiff's counsel be correct, there never could be a successful plea of abatement of the non-joinder of co-partners.

But, admitting that the contract, on the notes, was joint and several, the plaintiff brought his action on the joint contract, in the first suit.   It is laid down by Sergeant *Williams*, (1 *Saund.* 291. note *e.*) as to a joint and several bond, that " it is at the election of the obligee to consider such a bond either a joint or several one.   If he sues one, or each of the obligors, he acts upon it as a several bond.   If he sues all of them, he proceeds upon it as a joint bond.   If he sues two only of the three, he still proceeds upon it as a joint bond."   (*Shep. Touchst.* 363. 376.   1 *Str.* 76.   1 *Show. Rep.* 75.)   Here, therefore, the plaintiff, by first suing *two* of the four partners, has elected to go on the joint contract; and it is the *joint* contract, and not any several contract,

that is *carried into judgment.* This, then, distinguishes the present case from that of *Sheehy* v. *Mandeville* and *James-son*, on which the plaintiff so confidently relies, and which, to say the least of it, is not founded upon any former decisions or authorities. The decision in that case was, no doubt, pronounced by the highest tribunal known in our law; and to the opinions of that tribunal when given upon the construction of the Constitution of the *United States,* treaties with foreign nations, or acts of Congress, the State Courts must bow with respectful submission; but that Court possesses no supervisory power over the State Courts, for the purpose, however desirable, of producing an uniformity of decision throughout the *United States.* So far from this, that Court may be called upon to pronounce different opinions upon questions precisely similar, but arising in different states; for the laws of the several states, except in cases within the purview of the Constitution, and acts of Congress, are to be regarded as rules of decision in trials at common law, in the Courts of the *United States.* It is well known, that the common law is not regarded with equal veneration in all the states. In this state, the attachment to the common law is such, that by the Constitution of the state, it is made part of the law of the land, subject only to alterations by the legislature. There is no such provision in the Constitution of *Virginia;* and there it has been the practice, for half a century, to proceed to judgment against such of the joint debtors as are arrested, without regard to the others. (*Moss* v. *Moss,* 4 *Hening & Munf. Rep.* 311. *per Fleming,* J.) And the legislature of that state has so far abolished all distinction between joint and several contracts, as to permit the representatives of a joint debtor to be prosecuted in the same manner as if the contract was several. (*Laws of Virginia,* vol. 1. p. 34.) Ch. J. *Marshall,* therefore, who refers to no adjudged case, must have been governed, in forming his opinion, by the law and practice of *Virginia;* and it does not follow, that the law of this state is to be in conformity to that opinion. There is no law or practice here, allowing a plaintiff to sue two joint debtors, and recover judgment against one of them only. The 13th section of the act for the amendment of the law, (1 *N. R.*

*L.* 521.) was passed to relieve the creditor from the neces-
sity of proceeding to *outlawry* against such of the joint debt-
ors as could not be arrested.   The legislature never intend-
ed to give a creditor the. right of suing as many persons as
he pleased, as joint debtors, and recovering a judgment
against one of them.   They never intended to change the
rule of the common law, which requires a plaintiff to prove
a contract, upon which *all* the defendants are responsible,
or not recover against any of them.   They well knew, that
if a plaintiff were allowed to join as many as he pleased, as
defendants in the process, and recover against part of them,
he might, perhaps, make such as would be important wit-
nesses for those against whom he hoped to recover, parties
to the suit, and thereby deprive those defendants of the be-
nefit of their testimony.

   Chief Justice *Marshall* says, " had the action in which
judgment was obtained against *Jamesson*, been brought
against *the firm*, the whole note would, *most probably*, have
merged in the judgment."   He could not have meant, that
if the suit had been brought against *all the partners,* *under*
*the firm*, that the judgment would have merged the note, for
that is too plain a proposition to admit of any doubt.   His
meaning, therefore, must have been, that if the suit had
been brought against *J.*, as *a member of the firm*, having, *as*
*a partner, made the note under that firm,* the whole note would
have been merged, upon the ground, that it could not then
be said, that the first action was brought against *J.* singly,
" and the judgment obtained upon the *assumpsit* of *J.* indi-
vidually."   In the present case, the suit was brought against
*Soulden & Smith*, as partners, and averring, that the notes
were made by them, as partners, in the co-partnership name
and firm of *Soulden, Smith & Co.*   It was brought, there-
fore, not on the particular *assumpsit* of the two, if the ex-
pression may be allowed, distinct from that of the firm, but
upon the *assumpsit* of the co-partnership itself; and on the
very *assumpsit* upon which the present suit is brought.

   But, it is said, this is not like taking a bond of one part-
ner for the partnership debt, which, being a contract of a
higher order, merges the simple contract; because, a judg-
ment is no contract at all.   Admitting, for the present, that

a judgment is not a contract, still it has the effect of merging a simple contract, as much as a bond, and not only a simple contract, but of merging a bond itself. So that, if *S. & S.* had given their bond for the debt, it would have merged the whole partnership contract; and if the plaintiff had recovered a judgment on the bond, the bond itself would have been merged in the judgment. (*Clement* v. *Burt*, 3 *Johns. Cases*, 180. 2 *Johns. Rep.* 213.)

In case of the death of one of two joint obligors, his representatives cannot be sued at law; and if the other obligor is insolvent, the obligee must resort to a court of equity, to obtain satisfaction out of the effects of the deceased partner. The same rule applies to a promissory note where it is joint only. (1 *Caines' Cases in Error*, 122.) In *Hammersley* v. *Lambert*, which has been cited, the Chancellor, speaking of a copartnership debt, said, that it was " in equity joint and several;" but had it been joint and several *at law*, that would have been a perfect answer to the plaintiff's bill; and he would have been told, that he had a complete remedy at law.

The 13th section of the *act for the amendment of the law*, (1 *N. R. L.* 521. sess. 36. ch. 56.) which has been cited by the plaintiff's counsel, is copied from the colonial act, (*Van Schaick's ed.* 352.) the *preamble* to which clearly shows, that the legislature did not consider the contracts of partners joint and several, in the sense contended for by the plaintiff; but that, joint partners as they are there called, are merely *joint debtors.* *Notes* made by partners are not, necessarily, joint and several. Where a promise, made by several persons, is expressed, " we promise to pay," it is a joint note only. (*Chitty on Bills*, 350.)

The act which has been cited, if at all applicable, is in favour of the defendants. The 14th section provides, that where two or more persons are bound in one bond or recognizance, jointly and severally, or severally only, the obligee may proceed to judgment or execution against all, or any part of them, and if the amount is not levied, bring a further action against the residue, or any of them. This section shows, that it was thought necessary, in a case of a joint and several obligation, where the plaintiff had not proceeded

ALBANY,
January, 1821.

ROBERTSON
v.
SMITH.

severally, but had obtained judgment against some of the obligors jointly, to provide a remedy against the inconvenience of the common law, and give an action against the residue of the joint debtors. At common law, bonds, and simple contracts are, in this respect, on the same footing; and as the provision of the statute does not reach simple contracts, the common law, as to them, remains unchanged. But if the statute did apply to simple contracts, it gives no right of action against *all* the joint debtors, but only against the residue, not included in the first judgment. In *Drake* v. *Mitchell and others*, which has been cited, it seems to be admitted, on the argument, that a judgment against *one* on the covenant, would have been a bar. *Dampier*, in support of the demurrer, said, that " the debt could only be extinguished by following it up to judgment on the covenant out of which it arises; or by taking a remedy for it of a higher nature. The doctrine of extinguishment cannot apply, where a party having two remedies, one upon one instrument, and another upon another, follows only up to judgment; in that case, the other is reserved to him." *Woods, contra,* said, " judgment against one of several covenantors for the same debt, amounts to the extinguishment of the covenant against all." " As to the objection, that the recovery here was had against *one* only, it cannot avail, for this is a *joint* covenant; and, therefore, if there had been a recovery against one only upon it, no doubt it would have been a bar to a recovery against the others." And the Court, in that case, held, that the judgment was no bar, because a judgment, without satisfaction, " cannot operate to change any other *collateral and concurrent* remedy which the party may have." But the doctrine for which the defendant contends, is clearly laid down by *Chitty*, (*Chitty's Pl.* 30.) who says, " there is, however, this objection, in the case of a joint contract, to the non-joinder of one or more of the several parties liable, that if a judgment be obtained against one, in a separate action against him on such contract, the plaintiff cannot, afterwards, proceed against the parties omitted, and, consequently, loses their security." But, admitting that the judgment against *S. & S.*, did not work a technical *extinguishment* or *merger* of the notes, as to the other defend-

ants; and that another action would lie against the defendants not included in the first judgment; still, we contend, that the plaintiff cannot recover a second judgment on the same notes, against the same persons who are defendants in the first judgment; for, though *P. S.* is the only defendant taken, yet the proceedings, under the act, are against all, and judgment must be given against all, in the same manner as if all had been brought into Court.

The general rule is, that where a plaintiff brings a joint action of assumpsit against several defendants, if one of them is not liable to be sued, the action must fail as to all; (1 *Chitty's Pl.* 31, 32. 5 *Johns. Rep.* 160.) and this, though the person not liable has suffered judgment to pass by default. The exceptions to the rule do not reach this case. If, therefore, the plea shows, that the plaintiff could not recover against *S. & S.*, neither can he recover against the present defendant, *P. S.* It is not necessary, to make this plea available to *P. S.*, that *S. & S.* should have appeared and united in it, especially as they have not been served with process. It is true, that some of the language of Ch. J. *Marshall*, in *Sheehy* v. *Mandeville*, seems to look that way. But if that case is not distinguishable from the present, and from all others, yet, we suggest, that the rule is, that if a defendant has no defence alone, he can acquire none by joining with another defendant who has a defence. On the contrary, " if two defendants join in a plea which is sufficient for one, but not for the other, it is bad as to both." (1 *Chitty's Pl.* 545.) So far, therefore, from *Mandeville* acquiring a defence, by joining with *Jamesson*, such a union would, if *M.* had no defence alone, destroy the plea as to both. If, therefore, *P. S.* could ever have a defence to this action, he can have it by his sole plea. It certainly cannot be required of him, that he should join with *S. & S.*, on whom no process has been served, and who are not in Court.

Again ; in the present suit, *P. S.* alone is taken, which distinguishes this case from that of *Sheehy* v. *Mandeville.*

The plaintiff could not, at common law, proceed, until he had brought in all the defendants, or had outlawed those not brought in. He has proceeded, therefore, under the statute. (1 *N. R. L.* 521. sess. 36. c. 56. s. 13.) Now, it

appears, that the judgment against *S. & S.*, was obtained prior to the commencement of this suit. If, then, that judgment merged the contract *as to S. & S only*, they thereby ceased to be joint debtors with the other defendants, on that contract, (for no man can be a debtor on a contract which is merged as to him.) and there was no joint obligation or contract upon which a remedy could be had at law against them, had they been taken and brought into Court. This case, therefore, does not come within the statute; and the plaintiff not having brought the other parties into Court, but having gone on to plea and demurrer without them, cannot sustain the present action, even if it should be admitted that he might recover against *P. S. & A. Van Santvoord,* or *P. S.* alone, had the action been brought against them only.

Chief Justice *Marshall,* (6 *Cranch,* 265.) says, " in point of real justice, there can be no reason why an unsatisfied judgment against *J.,* should bar a claim upon *M.*" This might be said in all cases where the creditor has taken a *bond* from one partner for a partnership debt, whereby the original contract is extinguished; for an unsatisfied judgment is as good as an unsatisfied bond. The question as to merger, or extinguishment, arises as soon as the *higher security* is taken or obtained, and is not to be determined by subsequent events or circumstances, as to the higher security being satisfied or not. The plaintiff's counsel say, that it would be doing violence to the plain meaning of the transaction, to suppose that the plaintiff intended, by suing *S. & S.* only, to discharge the other two defendants; but the intentions of a plaintiff can never be allowed to determine the legal effect of a judgment. Every man is bound to know the legal consequences of his own acts. Justice requires nothing which the law does not allow; and the law abhors a multiplicity of actions. (15 *Johns. Rep.* 229. 432.)

It is said, that it is inconceivable how a barren judgment which does not affect *P. S.,* or vary his rights, in the least, can have the effect of giving him a good defence in this action. There are many transactions to which a defendant is not a party, which may furnish him with a good defence. Thus, in the case of *Cheetham and others* v. *Ward,* (1 *Bos. & Pull.* 630.) one of two joint and several obligors, made

out a good defence, by showing that his co-obligor had been appointed one of the executors of the obligee. And Ch. J. *Eyre*, in giving his opinion, in that case, says, " in fact, there is but one duty extending to both obligors ; and it was pointedly put, that a discharge of one, or a satisfaction by one, is a discharge of both ; this puts an end to the argument, that the action is not necessarily suspended as to both, for it is the effect of the suspension as to one, that releases, discharges and *extinguishes* the action as to both." And *Shepherd*, Serjeant, who was counsel for the plaintiff, admitted, that " when the bond is joint, and the debt is extinguished as to one co-obligor, it is extinguished as to both." So, one defendant who suffers a verdict or judgment to be taken by default against him, may be protected by a successful defence made by his co-defendant. (*Bull. N. P.* 84.)

*Jay*, in reply, 1. As to the objection, that if the plaintiff has any remedy, it is by a suit against *P. S.* alone, and not jointly with the other defendants, it is merely *formal*, and intended to drive the plaintiff to a new action. The two defendants against whom the judgment was obtained, were made parties, because, if they had not been made defendants, the non-joinder of them would have been pleaded in abatement ; and, because, in *Sheehy* v. *Mandeville and James-son*, the same course was pursued and sanctioned by the Supreme Court of the *United States*. The other defendants were not served with process, as they were notoriously insolvent, and because they might have said, that they ought not to be *bis vexati pro eadem causa.* If the plaintiff can recover at all, it must be in the present action ; otherwise, a plea in abatement, by driving him to this form of action, would be, virtually, a plea in bar.

A contract entered into by a plurality of persons, and not expressed to be either joint or several, is considered a joint, or a several contract, according to circumstances. It is so far joint, that one or more sued upon it, may, on applying in due season, compel the plaintiff to unite the others in the action. It is so far joint, also, that at law, perhaps,

ALBANY, January, 1821.

ROBERTSON
v.
SMITH.

though not in equity, the remedy against one or more of the parties, may be lost by death. It is several, when it is sufficient evidence of a several averment in the declaration. It is several, when the assets of a deceased partner are made responsible. It is several, when it is decided, that the release of one under a bankrupt or insolvent law, or by reason of infancy, &c. is no discharge of the other. So, that it appears, that a contract not expressed to be joint or several, may be joint, in relation to one set of circumstances, and several, in regard to another.

Suppose two partners, one residing in *England*, and the other here, a judgment against the one in *England*, cannot bind the separate property of the partner here, nor a judgment here bind the property of the partner in *England*. If, then, a judgment against one, is a bar to an action against the other, it will subvert the fundamental principle of the law of partnership, that not only the joint, but the separate property of each partner is liable for the debts of the firm. Again ; suppose, on a suit against partners, one only can be found in the state, to be served with process, how is the creditor to obtain any redress against the persons, or separate property of the absentees, unless he is allowed to sue them, whenever they return ?

But, it is said, that we must have a judgment against all the defendants, or against none, and then there will be two judgments for the same cause, against two of them. All the plaintiff asks is a judgment, which, in its *form*, may include all the defendants ; but in *substance* and effect, P. S. only ; a judgment on which " it shall not be lawful to issue or execute any execution against the body, or separate property, of any person not brought into Court." In that case, the persons and separate property of S. & S., would be reached by one judgment ; and the person and separate property of P. S., and the joint property of all the defendants, by another judgment. And this is the relief to which the plaintiff is legally entitled. Should it be said, that the joint property of S. & S., would then be bound by two judgments for the same debt, it may be answered, that this is no more than what may happen in other cases ; as where several judgments are obtained against the makers and endorsers

of a promissory note, all of which are for the same identical debt. But, the first judgment, in truth, affects only the separate property of *S. & S.*, after an account taken of the partnership. (*Matter of Smith*, 16 *Johns. Rep.* 106.) At all events, it does not belong to *P. S.* to make that objection.

The whole argument of the defendants rests on the harsh, technical doctrine of extinguishment; a doctrine like that of survivorship, which neither is, nor ought to be, (as Mr. J. *Thompson* observed,) " viewed in a very favourable aspect either at law or in equity." It savours of the nature of penalty and forfeiture, and ought, therefore, to be construed most strictly. It is not surprising, then, that the defendant's counsel have not been able to adduce a single adjudged case in point, but have been compelled to reason from analogy. Every general rule of law, however absolute in its terms, is to be understood relatively, and is subject to qualification and exception. Suppose the case of a contract made *before* the passing of an insolvent law, and judgment recovered after the law is passed ; will it be said, that a discharge under the insolvent law, discharges the judgment ; that the judgment extinguished the *contract;* that although no state can pass a law impairing the obligation of a contract, yet, as a judgment it is not a contract, it does not come within the clause of the Constitution of the *United States ?* Will it be said, that a contract which has been solemnly declared by a Court valid and effectual, recorded on its rolls, and ordered to be enforced, ceases, therefore, to be protected by this constitutional provision ? Where a *bond* is given for a simple contract, the parties, by their agreement, substitute the one for the other. That is not the case with a judgment, which is rendered *in invitum.* It is true, after a judgment, and while it remains in force, a new action cannot be maintained for the same identical cause of action ; for the Courts no longer take notice of the original subject of dispute, but merely enforce the judgment ; and, in that sense, the original contract may be said to be extinguished. Still, the contract, and the obligation to discharge it, remain in full force. The record of the judgment does not destroy the contract, but affords the highest and most solemn evidence of it. In the suit against *S.*

ALBANY,
January, 1821.

ROBERTSON
v.
SMITH.

& S., the subject of controversy was not whether they were the only partners in the firm, but whether they were partners at all, and made the notes in question. The subject of dispute in the present action is, whether P. S. was not, also, a partner when the notes were given; this is the real question which a jury would have to decide. If a judgment necessarily *extinguishes* a contract, why does not a judgment against *executors and administrators* bar an action against heirs and devisees for the same identical debt? Or, why does not a judgment against a surviving partner, bar all remedy against the assets of the deceased partner? A Court of equity cannot revive that which the law has extinguished.

The counsel for the defendants finding themselves strongly pressed by the authority of the case of *Sheehy* v. *Mandeville and Jamesson*, have exerted all their ingenuity to find out some peculiarity in that case to render it inapplicable. But neither the counsel who argued that cause, nor the Chief Justice who pronounced the decision, put it on any peculiar grounds either of fact or local law. *Lee, arguendo,* says, " the cause of action against *J.* only, is merged in the judgment, not the joint cause of action against *M. & J.*" And *Young*, and *C. Lee, contra,* say, " a plaintiff may, if he pleases, sue only one of the co-partners, and, if the defendant does not plead in abatement, the action may be maintained."

If *P. S.* is a partner, there can be no question as to the justice of the plaintiff's claim against him, and that he ought, in honesty and conscience, to pay the debt.

SPENCER, Ch. J. delivered the opinion of the Court. The first position taken by the plaintiff's counsel is, that where several persons are indebted as partners, they are jointly and severally indebted; and the case of *Rice* v. *Shute,* (*Burr. Rep.* 2611 ) has been cited in support of that doctrine. Lord *Mansfield* did say, in that case, *that all contracts with partners were joint and several, and every partner was liable to pay the whole.* The statement of that case is, that on the trial, evidence was given that one *Cole*, who was not joined in the action as defendant, was a partner of *Shute,* and thereupon the plaintiff was nonsuited. This nonsuit was set aside, on the ground, that the fact of there being

another partner ought to have been pleaded in abatement. This was a most salutary decision, and prevented much injustice and costs, by requiring the party defendant to take his stand *in limine*, by pleading in abatement, and showing who the other partners were. But it would be straining Lord *Mansfield's* opinion, unreasonably, to say, that he meant technically, that all contracts with partners were *joint and several*, for, then, the non-joinder of any of the partners never could be pleaded in abatement, which all the Court expressly decided. In equity, they are joint and several; and so they were as regarded that suit; the defendant having neglected to avail himself of the objection in a legal manner. Surely, it cannot be said, that in a legal sense, where there are a plurality of debtors, that their contract is joint and several, when they have engaged jointly to pay the debt. Each debtor is bound for the whole, until the debt is paid; but as regards the remedy to coerce payment, there is a material and settled distinction. If they have undertaken severally to pay, separate suits may be brought against each; but where their undertaking is joint, unless they waive the advantage, by not interposing a plea in abatement, they must be sued jointly, if in full life, and neither has been discharged by operation of a bankrupt or insolvent law, or is not liable on the ground of infancy. We must, then, consider the promises in this case, as joint.

Two questions then arise: 1. Whether, by the plaintiff proceeding to judgment against two of the joint promisors, the debt is not merged in the judgment? 2. Whether, having made the two partners against whom the judgment was recovered, parties to this suit, the suit can be sustained against the other defendants, in consequence of the extinguishment of the simple contract debt, as to the two defendants, by the judgment against them?

(1.) In 1 *Chitty*, 30., the law as to the effect of proceeding to judgment against one of several joint debtors, is thus laid down: " There is, however, this objection in the case of a joint contract, to the non-joinder of one or more of the several parties liable; that if judgment be obtained against one, in a separate action against him on such contract, the plaintiff cannot, afterwards, proceed against the parties omitted, and,

consequently, loses their security." By reference to the cases cited by *Chitty*, it will be found, that they were actions in *tort*; and even in those actions which are, in their nature, joint and several, it has been held, that where the plaintiff proceeded to judgment against one, the others might plead this in bar. (*Cro. Jac.* 73. *Yelv.* 67. *Com. Dig. Action, K.* 4. 6 *Co. Rep.* 75.) These cases came under review in this Court, in *Livingston* v. *Bishop*, (1 *Johns. Rep.* 291.) and it was decided, that a judgment alone would be no bar, without satisfaction. In *Wilkes* v. *Jackson*, (2 *Hen. & Munf.* 358. 361.) it was decided, that a judgment for damages, in a separate action against one of several joint trespassers, is a bar to an action against the rest. There is, however, a wide difference between a judgment against one of several *tort-feasors*, and against one of several joint debtors. In the latter case, whatever extinguishes or merges the debt as to one, merges it as to all.

(2.) But the second point is clearly with the defendants; that in actions *ex contractu*, against several, if a joint contract be not proved against all the defendants, (with the exception of infancy, and a discharge under a bankrupt or insolvent law, and of the death of one of the parties,) the plaintiff must be nonsuited on the trial; and if it appear on the pleadings, that too many persons are made defendants, the defendants may demur, move in arrest of judgment, or sustain a writ of error. (1 *Saund.* 153. n. 1. 291. f. g. 2 *Str.* 820. 1 *Bos. & Pul.* 73. 6 *Term Rep.* 770.) In the case of *Hartness and another* v. *Thompson and wife and Nelson*, (5 *Johns. Rep.* 160.) the plaintiffs declared against the defendants on a joint and several promissory note. It appeared, on the trial, that *Nelson* was an infant, a verdict was taken for him, and against the other defendants. This was held to be correct, on the ground, that infancy was a personal privilege, to be taken advantage of only by the infant himself. This, however, was, in some measure, a departure from former decisions; and the contrary was determined in 3 *Esp. N. P.* 76. and 5 *Esp.* 47. We adopted the principle advanced by Mr. Justice *Deniston*, (1 *Wils.* 90.) that in cases where an action is brought against several persons on a joint contract, and one pleads some plea which goes to his personal discharge, and not to

the action of the writ, the plaintiff may enter a *nolle prose-qui* as to him, and proceed against the others. But Mr. Justice *Van Ness*, in delivering the opinion of the Court, in *Hartness* v. *Thompson and others*, expressly says, " the general principle, that the plaintiff must prove a joint contract when he brings a joint suit, is not intended to be shaken, by the rule which the Court have thought proper to apply to this case." " We mean," (he says,) " to confine its operation, exclusively, to the case of a defence insisted upon by one of several joint debtors, which is personal to him, and which does not go to the discharge of all." If, then, in an action against several, upon a joint contract, the plaintiff must show a joint subsisting contract, we are led to the inquiry, whether the judgment against *Soulden*, and *Peter Sken Smith*, upon these identical notes, does not form a bar to a recovery in this suit against the four defendants. In *Cheetham and others, Executors*, v. *Ward*, (1 *Bos. & Pul.* 630.) the case was, that *William Ward*, and *James Ward*, gave a joint and several bond to *Cheetham;* the plea was, that *Cheetham*, the testator, by his last will, appointed *William Ward* one of his executors, who, with the other executors, duly proved the will, and took upon them the execution thereof. There was a demurrer to the plea, and joinder. The Court were unanimously of opinion for the defendant ; and *Eyre*, Ch. J., put the decision on this acknowledged principle, that where a personal action is once suspended, by the voluntary act of the party entitled to it, it is forever gone and discharged. This, he said, was admitted to be the case, where there was but one obligor, but that the very point in issue had been decided in the year book, 21 *Edw: IV. 81. b.* He said, there was but one duty extending to both obligors, and it was, therefore, pointedly put, that a discharge of one, or a satisfaction made by one, is a discharge of both ; and that, he said, put an end to the argument, for it was the effect of the suspension as to one, that released, discharged, and extinguished the action as to both. *Heath*, Justice, said, it was of no consequence whether the release be by operation of law, or by deed demonstrating the intent of the party. *Rooke*, Justice, said, the obligee has it not in his power to elect to discharge one obligor,

ALBANY,
January, 1821.

ROBERTSON
v
SMITH.

without discharging the other.    (1 *Bos. & Pull.* 632. S. C. *note a. Bac. Abr.* tit. *Obligation,* D. *and the cases there cited.*)  The case of *Drake* v. *Mitchell and others,* (3 *East,* 251.) has been much relied on by the plaintiff's counsel as a strong authority in maintenance of this action.   The case was, that one of three joint covenantors gave a bill of exchange for part of a debt secured by the covenant, on which bill a judgment was recovered.   The plea stated, *that for the payment and satisfaction thereof,* (the 111*l*. 2*s* 3*d*. residue,) the bill was given. and that judgment had been recovered thereon.   It was decided. that the judgment was no bar to the action on the covenant against the three, it not being averred, that the bill was accepted as satisfaction, nor to have produced it, in fact.   Lord *Ellenborough* said, he had always understood the principle of *transit in rem judicatam,* related only to the particular cause of action in which the judgment is recovered, operating as a change of remedy, from its being of a higher nature than before.   That a judgment recovered in any form of action, is still but a security for the original cause of action, until it be made productive in satisfaction to the party ; and, therefore, till then, it cannot operate to change any other collateral, concurrent remedy, which the party may have.   *Grose,* Justice, considered the bill as a collateral security ; and *Le Blanc,* Justice, put his opinion on that ground.   Taking what fell from Lord *Ellenborough,* in reference to the subject matter, it has no bearing on this case, where the judgment was upon the joint security, or promise itself.

The 13th and 14th sections of the statute for the amendment of the law, &c. (1 *N. R. L.* 521.) have been referred to.   The 13th section gives a remedy to a creditor against joint debtors, by authorizing process to be issued against them in the manner then in use, and in case any of them are returned taken, he or they so taken and brought into Court, shall answer to the plaintiff, and if judgment pass for the plaintiff, he shall have his judgment and execution against such of them as were brought into Court, and against the other joint debtors named in the process, in the same manner as if they had all been taken and brought into Court, by virtue of such process ; but execution shall not be executed against the body, or lands, or goods, the sole

property of any person not brought into Court. The 14th

section relates solely to bonds and recognizances, in which persons are bound jointly and severally, or severally only, and provides how they may be sued; and, as regards them, alters the provisions of the common law. The 13th section of the act was intended to obviate the difficulty and delay arising from the necessity of outlawing such of the defendants as it was necessary to make parties, and who could not be arrested on the process; for it was a settled principle of the common law, that if there were several defendants in a joint action, and one of them could not be arrested, the plaintiff must proceed to outlawry against him, before he could go on against the others. (1 *Tidd's Pr.* 125. and the notes.)(a) The provisions of the 13th section of the act referred to, show, conclusively, that this was the sense of the legislature, and to remedy this inconvenience, the statute was passed.

I think, then, that I am authorized in saying, that, in case of joint debtors, they must be jointly sued; that if a less number than the whole be sued, that is matter which can be pleaded in abatement only; that it is necessary to show a joint subsisting indebtedness in all the defendants; and, in cases of *assumpsit*, it is necessary to show a subsisting liability on the part of all the defendants, as promisors, with the exceptions already mentioned; and that where, as respects any of the defendants, the right of action is gone, or suspended, their joint liability being at an end, the other defendants may avail themselves of this suspension or discharge, whether it be produced by the act of the party, or by operation of law, at the instance, and by the act of the creditor. Consider the operation of the contrary principle, as regards this very case. The plaintiff has already a judgment upon these notes against two of the defendants, and may proceed to execution. In the present suit, the same defendants are made parties, and necessarily so, and in this suit, also, if the plaintiff can recover, there must be judgment against them; so that, with regard to two of the defendants, there will be, on the records of this Court, two distinct judgments for the same debt. In the

(a) Vide 1 *Dunlap's Pr.* 140.

former, the separate property of both the defendants will be liable to be taken and sold on execution, and in the latter, the joint property of all the present defendants. This is certainly an anomaly in the law, and is inconsistent with all my notions of a correct, and regular judicial proceeding.

The case of *Sheehy* v. *Mandeville*, (6 *Cranch*, 253.) has been cited and relied on, as entirely decisive of this case. I regard that case as entitled to high respect, from the elevated character of the Judges who compose that Court; but it is not authoritative or binding here. The decision is not one of those in which that Court has any paramount or controlling force over the State Courts. It is to be respected only as the opinion of learned and distinguished Judges; and, viewing it in that light, notwithstanding the homage I am disposed to pay to that Court, I cannot, consistently with my views of the law, yield to its authority or reasoning. The cause came up on error to the District Court, sitting at *Alexandria*. The action was *assumpsit*, brought by *Sheehy* against *Mandeville & Jamesson*, upon a promissory note purporting to be given by *Jamesson* only. The allegation was, that *Mandeville* was a secret partner, and that the note had been given by the defendant, under the style, name, and firm of *Robert B. Jamesson*. The only plea necessary to be noticed, is the one in which the defendant, *Mandeville*, who was alone taken, and who alone pleaded, set up, that the plaintiff had before sued *Jamesson* on the same note, in the Circuit Court of the district of *Columbia*, and that such proceedings were had in that suit, that judgment was rendered thereon in favour of *Sheehy* against *Jamesson*, for the debt, and damages, and costs, with averments that the judgment was unreversed, and that the note then sued upon, was the same as in the former suit. There was a demurrer and joinder. In the Circuit Court, judgment had been given for the defendant. The opinion delivered by Ch. J. *Marshall*, on this point, is, that as the first suit was brought only against *Jamesson*, it could not be correctly said, that the contract is carried into judgment, as respects *Mandeville*; that the doctrine of merger could be applied only to a case in which the original declaration was on a joint covenant, not to a case in which the declaration in the

ALBANY,
January, 1821

ROBERTSON
v.
SMITH.

first suit was on a sole contract, (even admitting that a judgment against one of several joint obligors, would terminate the whole obligation, so that a distinct action could not afterwards be maintained against the others, which he did not admit.) He observed, also, " that admitting that a previous judgment against *Jamesson*, would be a sufficient bar as to him, had *Jamesson & Mandeville* joined in the same plea, it would have presented an inquiry of some intricacy, how far the benefit of that bar could be extended to *Mandeville;* but they have not joined in the same plea. They have severed; and as the whole note is not merged in a judgment obtained against *Jamesson*, on his individual *assumpsit*, the Court is not of opinion, that *Mandeville* has so pleaded this matter as to bar the action." This is the substance of the opinion, and although it comes recommended to us by the abstract justice of the principles advanced, I certainly have not been so fortunate in my researches, as to find the adjudged cases in support of it. It is, undoubtedly, true, that a suit and judgment against *Jamesson*, was not a judgment against *Mandeville;* but that the doctrine of merger, or extinguishment, would be applicable only to a case in which the declaration was on a joint covenant, and not to a case in which the declaration in the first suit was on a sole contract, I must beg leave to deny, not in the terms in which the proposition is stated, but upon the facts of that case, and of the one now under consideration. In both cases, the declaration was upon a joint promise ; and in the one case, a judgment had been rendered against one of the two defendants, on the same joint contract, and in the other, against two of them on the same promises. Now, if the general issue had been pleaded, and under that evidence could have been given of the recovery of the judgments against some of the defendants, I beg to know, whether, as regarded such defendants, the promises were not merged in the judgments. It seems to me, that this is an undeniable proposition, else, there may be several judgments against the same person for one and the same debt or duty. If, then, as respects the defendants, against whom the judgment had been recovered, the simple contract was merged in the judgment, and they had ceased to be answerable upon the simple contract, the

plaintiff must fail, because, he has not maintained his declaration in showing a subsisting indebtedness in all the defendants, in the manner alleged in his declaration; but, on the contrary, it would appear, that the plaintiff, by his own act, through the instrumentality of the law, has suspended his remedy against some of the defendants, by changing their indebtedness from that of a simple contract to a debt of record. Nor do I perceive how the Court could disengage themselves from the intricacy of the inquiry, which it was admitted would have arisen, had *Jamesson & Mandeville* joined in the plea, (which, in that case, it seems to be admitted, would have been a bar in favour of *Jamesson*,) because *Mandeville* alone pleaded. If a judgment rendered against one of several joint promisors, extinguished, merged, or suspended the plaintiff's right on that contract against one, and, as a consequence, against the other, then, certainly, either of them could plead that matter; and how the legal state of the question could be varied, by the same matter being pleaded jointly or severally, I am at a loss to discover. Upon the whole, I am not satisfied by the train of reasoning adopted in the case of *Sheehy* v. *Mandeville*. My conclusion is, that the judgment against two of the defendants, is a bar to a suit brought on the same cause of action against those two, and *Peter Smith* and *Van Santvoord*, as long as that judgment remains in full force. Whether the Court would not allow the plaintiff to move to vacate the judgment, is a different question?

Judgment for the defendant.