Judge Miles
delivered (he Opinion of the Court.
The complainant filed his bill against the administrators and heirs of David Bedell, alleging that the deeedant was in his debt, and that since his death he had recovered judgment against his administrators, for the amount, to be levied of the goods and chattels of the testator; that the execution liad been returned nulla bona, and that the administrators asserted that they had fully administered, and had nothing in their hands. He prays that the administrators may discover on oath, and say, whether they have any assets in their hands, and that the heirs may set forth the real estate to them descended, which tile complainant alleges is considerable, and that a decree may be rendered against the assets in the hands of the administrators, if any was discovered, and if not, then, against tli.e heirs, to be satisfied of the real estate.
The administrators answered, declaring that they had fully administered before the action at law, and had nothing in their hands, and exhibited a settlement with the county court shewing that they owed nothing.
The heirs, who were the children of the deco-, dent, did not answer, but filed a demurrer, which was overruled.
The court below rendered a decree for the amount of the judgment at law, uto be made out of *599 any assets remaining in the hands of the administrators unadministered, or that might thereafter come to their hands to be administered, and in ease no personal estate should be found to make the same, then to be levied of the assets real in the hands of the heirs, which had descended to them from their deceased ancestor.'”
Where, in defence of a bill against an administrator for the discovery of assets, he shews lie had fully administered, (which he may do by the statute, notwithstanding the judgment in the common form, to be made of the assets,) there should be no decree against him guando occi derint.
Heirs wore not bound to account for the assets de scended to them, except on the contracts of the ancestor, •wherein they were expressly named, until the act of 1792.
*599 To reverse this decree tins writ of error is prosecuted. We cannot perceive any propriety in the decree against the administrators. They evidently shewed by competent testimony unimpcached, that they had fully administered. It is true there was already a judgment at law against them, admitting assets. But under the act of assembly which permits executors or administrators to plead fully administered, in an action for a devastavit, this judgment was not conclusive, and it was competent for them to shew that they had fully administered, this judgment notwithstanding. This they did do in this case, and, therefore, no decree for the amount ought to have passed against them. It may be said that this decree renders them in no worse situation ■than they stood under the judgment at law. This is true as to the amount of the original demand. But why should they be subjected to two suits, and both a decree and judgment for the same demand, and two executions therefor. A plaintiff at law •may bring an action of debt upon a judgment and obtain a second judgment. But such proceeedings are frequently held to he vexatious and are not favored even at law, and a court of equity ought not to lend its powers for such a purpose, without shewing some obstacle to the party’s proceeding on bis judgment. There the judgment is as good to the .complainant as the decree, and he ought to have been left to it, and not to have obtained a decree against administrators to harrass, barely because be bad a judgment for the same demand previously.
It is insisted that the bill contains no equity as to flic heirs, and that as to them it ought to have been dismissed. This involves a question, arising under our statutes not heretofore considered by this court.
Previous to the act of 1792, subjecting lands to the payment of debts, heirs could not be sued or *600 made liable to account for the assets descended, ex • cept on contracts in which the heirs were expressly-bound, and it is not pretended that they’ were bound in the contract on which this judgment at law was obtained.
Act of 1792, subjected the heirs and devisees to be sued jointly with the executor in all actions maintainable against him.—
But—
Heirs were not liable to be sued otherwise than jointly with the executor, by any express enactment, until the act of 1019.
Query, may the heir be .sued on the contract of the ancestor, jointly with the executor, after judgment ¡¡gainst the executor and the ex-eoutor returned nuilii bona?
*600 This statute provides, that “the same actions which will lie against executors or administrators, may be brought jointly against them, and the heirs and devisees of the dead person or both, and shall not he delayed for the non-age of any of the parties.”
This provision has been correctly held to subject heirs to actions and judgments on contracts in which they were not expressly bound, and indeed to all other causes of action in which executors and administrators can be sued, or made liable for the acf s of the person whose estate they represent, provided the heirs were sued jointly with the administrators or executor.
But tins remedy was statutory and must be pursued, and if the heirs were omitted in the first action, there was no express provision for suing them subsequently in a separate suit, until the passage of the act of 1819, which authorises a separate suit a~ gainst the heir, in the case of contracts, and it maybe insisted that previous to the passage of the latter act, there was no remedy at law left to reach the estate of the heirs, after personal representatives were prosecuted to execution unsuccessfully, and that since, there is yet no remedy to reach the real assets in the heirs, except in cases of contracts, unless the chancellor will interfere.
It may also be urged that the creditor has a right to go the accustomed road against the personal representativos first, and that lie may do so, under the reasonable expectation that there is a sufficiency of personal assets, which he is bound first to. pursue, and never discover till the plea of plenc adminislravil is found against him, or later, when an execution is returned nulla buna, that he cannot succeed unless the chancellor helps him to reach the real estate, which was declared to lie liable, jn the hands of the *601 ancestor, and only has a plea for escape because that the heirs were not sued jointly with the personal representatives in the first instance.
Isa judgment against one or more of the partners of a firm, a bar to an action against them and others discovered, after the first judgment, to be concerned %
Case in New York against the action.
Justice Washington’s opinion.
Held in the Supreme court of the United States that a judgment against one partner alone is not a bar to a joint action agamst all.
Whether, after prosecuting the personal representatives unsuccessfully, a creditor máy or may not bring a new suit at law, including therein a second time the personal representatives with the heirs of devisees, is a query of some moment. It cannot be expected that we could find precedents settling it expressly in point, except under our own statute and in our own state, and we know of none.
The only question somewhat analagous to it in the decisions of other countries, which occurs to us, is the case of a creditor suing first one or more partners alone, and prosecuting them to judgment, and then bringing a new action against them along with other partners, who were not sued in the first instance, and indeed at that time unknown. Whether he can or cannot do so, is a question not at rest jn the hands of modern judges.
The Supreme court of New York, in the case of Robertson vs. Smith, 18 John. 459, has decided, that all that are sued in the second action, as well those who were, as those who were not sued in' the first, may plead the first recovery in bar of the se? cond suit.
Justice Washington, in 1 Peters 301, has said, that in the second joint action, all may plead the first recovery in bar, and if those not sued at first be sued alone, they can plead in abatement; while the Supreme court of the United States, in the case of Sheely vs. Mandeville and Jamison, has expressly decided that a judgment against one partner alone, is no bar in a joint action against all. Without determining between those conflicting authorities, whether the rigid technicality of the first kind, or the equity of the latter ought to prevail — and without settling the question, whether a creditor may first sue the personal representative, and if he is unsuccessful, then sue him again jointly with the heir or devisee under the statute, and leaving the point to be decided, when a proper case to consider it maj. *602 occur at law, we shall first enquire whether there is any other principle settled, which will exclude this case from the jurisdiction of the chancellor.
Subjecting land to the payment of debt?, being a procceeding purely legal, the chancellor can interfere only to remove obstructions to the free course of the law.
If the creditors of the deceased sue the executor only,omitting the heirs, and fails to make the money for defect of assets, thechancellor cannot help him against the heir.
Ignorance of the creditor of the deficiency of ■personal assets, is no ground for the jurisdiction of equity to subject the real assets descended to the heir.
It must be confessed that the subjecting of real estate to the satisfaction of a judgment at law, is a proceeding purely legal, and if the chancellor can get hold of the matter, it must be by calling in his aid to remove some impediment obstructing the free course of proceeding at law, and it is admitted that in many such cases the chancellor will take the matter up, where a court of law stops short of the mark.
But what circumstance exists in this case to invite the powers of the chancellor? The party could have proceeded at law against the heirs jointly with the administrators, even if it he granted that he cannot do it now. It behoves him, therefore, to assign some good reason for not doing so at first, when he invokes the aid of the chancellor. The only apology which can be offered for bis failure, is, that he believed he could reach his money by suing the personal representatives alone, and was ignorant that they had expended all the personal assets till the executor informed him of it. Will this excuse be sufficient? We consider the question to be settled against him.
In the cash of Penny vs. Martin et. al. 4 John. Chy. Repts. 566, Chancellor Kent was called upon to grant relief against secret partners, not before sued at law, where their co-partners had been previously sued and a judgment obtained against them, and the reason assigned by the complainant for coming into equity, was his entire ignorance, when the suit at law commenced and existed, 'that the additional partners now sued, were partners at all. In deciding the case that able chancellor uses the following language: “It is equally certain that the present defendants who now join in the demurrer, might have been sued at law in the original action. The dernapd is on a contract to which it is alleged they were parties, as being dormant partners. The omission to make them parties in the action at law, arose according to the allegation in the bill, from *603 ignorance of the fact that they were such partners. Is that a sufficient ground for transferring to this court jurisdiction of a matter properly, if not exclusively cognizable at law? The ignorance might have been removed by due vigilance and enquiry, and perhaps by the assistance of a bill of discovery here. The plaintiffs have no particular equity entitling them to relief. Ignorance, as Lord Lough-borough said, is not a mistake. They never enquired whether R. and M.” (the old defendants,) had secret partners, -and they gave the whole credit to them.”
Ignorance of a party ig not a mistake to give the chancellor juris» . diction.
If a paity become remediless at law by his negligence, he shall not be relieved in, equity.
Creditor of the deceased suing and re1covering a judgment against the personal representative only, and failing to make the money on execution, cannot subject the estate descended to the heif by bill in equity.
“ If they have now got into embarrassment and difficulty in respect to their legal remedy, by pursuing" the ostensible partners at law without such enquiry, I do not know of any principle that will authorise this court to take jurisdiction of a case, where the remedy was in the first instance full and adequate at law, because the party may have lost that remedy by ignorance founded on negligence, not on accident or mistake, or any misrepresentation or fraud. Generally speaking, a jurisdiction does not arise hero from the mere circumstance that a party has omitted to make a proper case at law. There is no such head of equity jurisdiction. The general rule is, that if the party becomes remediless at law, by negligence, he shall not be relieved in equity. He must shew that he has been deprived of his legal remedy by accident, casualty, misfortune, &c.”
This case, though not entirely similar in fact to the present, in principle, may be .said to be in point, with this difference, that the present is much stronger ’against the complainant on the principles there recognized, There the party was wholly ignorant that he had any legal right' to sue others at law at the date of the original suit: here he did know, or was bound to know, that he could sue the heirs as readily as the administrators, and prudence might have dictated the propriety of his doing so, as a measure of caution; but he omitted to do so because he was ignorant that the personal estate was inadequate, and run the risque of progressing without the realty. By that risque he must abide, un *604 less lie can find a remedy remaining at law, and whether he can or cannot we give no opinion.
Crittenden, for plaintiffs; Triplett, for defendants.
It follows that the court below erred in giving relief against the heirs also, and the decree must be reversed, with costs, and the cause be remanded, with directions to dismiss the bill with costs.