## Case No. 14,135.

TRAFTON et al. v. UNITED STATES.

[3 Story, 646.] [1]

Circuit Court, D. Maine.    May Term, 1845.

JOINT CONTRACTORS — EFFECT OF JUDGMENT AGAINST ONE UPON SUIT AGAINST BOTH — POSTMASTER'S ACCOUNTS — DEPOSIT OF RECEIPTS — SUBAGENTS ACTING EX CONTRACTU.

1. Where an action is brought against two joint contractors, a judgment recovered against one may be set up as a bar to the suit.
[Cited in Sloo v. Lea, 18 Ohio, 306; North v. Mudge, 13 Iowa, 499.]

2. The doctrine in the case of Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253, commented on and questioned.

3. Where a contract is both joint and several, a judgment against both contractors is not a bar to a several action against either one of them; and a several judgment against either is not a bar to a joint judgment against both.

4. Where A, being postmaster, gave an official bond to the United States, and subsequently employed B as his assistant, and the receipts from the post office were deposited in their joint names, and an action was brought against A on his bond, and judgment recovered,—but, he having subsequently become bankrupt, the present action was brought against A and B,—it was held, that the deposit in the joint names of A and B did not make them jointly responsible.
[Cited in Com. v. Phœnix Bank, 11 Metc. (Mass.) 148.]

5. There was no privity of contract between B and the United States: and even if there were, the former judgment against A was a bar to the present suit.

6. A postmaster is not bound to keep the monies received for postage distinct from his own, nor to deposit it specifically in the name of the United States.

7. In general, sub-agents, acting ex contractu, are responsible only to the immediate agents who employ them, and not to the principals of such agents; and there is no necessary exception to this rule in the case of public officers, although, under particular circumstances, an exception may arise.

Writ of error upon a judgment rendered in the district court of the district of Maine. The original action was assumpsit for money had and received, and was commenced in September, 1841. The material facts as they appeared on the record, in the bill of exceptions, were as follows: Mark Trafton was the postmaster of the city of Bangor, and in January, 1837, gave a bond, with sureties, for the faithful performance of the duties of his office. In June, 1839, he was removed from his office; and during his continuance in office, John Bright (the

[1] [Reported by William W. Story, Esq.]

co-defendant), acted, for a certain salary, as his assistant in office. It further appeared in evidence, that during this period, all the deposits of monies made in the banks at Bangor, were made in the joint names of Trafton and Bright; and all the checks drawn therefor, were drawn by Bright, and signed in their joint names. There was also evidence in the case conducing to prove, that the monies so deposited were received by the postmaster, as postage, in the course of his official duties; but it did not appear, that all the monies so received were placed in deposit in the banks. It farther appeared, that the amount paid out of the post office between the 1st of April, 1837, (up to which time the accounts seem to have been properly settled, except a balance of $10.79, founded in a mere mistake detected in a prior account rendered), and the 30th day of June, 1839, in quarterly balances, and for clerk hire and other incidental expenses of office, far exceeded the amount deposited in the banks to the credit of Trafton and Bright, during that time; but there was more deposited in the said banks, during that time, than accrued to the government. It was also proved, that Trafton had the general oversight, superintendence and control of the office, and free access to and disposition of the money collected therein; and that Bright received a stated salary for his services. Upon the removal of Trafton from office, a balance was found due from him to the government, of $444.41; to recover which, the government brought a suit upon his official bond, against him and his sureties, in which, at the June term, 1841, judgment was rendered against Trafton and his sureties for the sum of $444.41, with $8.89, interest, and costs of suit taxed at $44.40, which judgment still remains in full force and unsatisfied. The sum claimed in the present suit is precisely that in which the judgment was obtained. Trafton has since become insolvent; but Bright (his co-defendant), is solvent. At the trial, the counsel for Trafton and Bright requested the district judge to charge the jury, that the facts stated in the brief of the defendant's counsel, proved and admitted in the case, were a bar to the present action; and further, that if the jury were satisfied, that, if Trafton used the money so collected in the post office, on his own account, so that not enough was left to pay the government, the said Bright would not be answerable. These instructions the district judge declined to give. But he did instruct the jury, that the facts set forth in the brief statement of the defendants, did not furnish a bar to the action; and that if the jury were satisfied that the defendants did deposit money collected in the post office, in a bank or banks, in their own names, it made such money their own; and if the jury were satisfied that Trafton and Bright had deposited the money collected in the post office, in their own names, then they were jointly answerable in this action. The jury thereupon returned a verdict for the United States, of $470.33. And the present writ of error was brought to reverse the judgment rendered therefor.

Wm. Abbott and Howard & Shepley, for defendants.

Mr. Williamson, for the United States.

STORY, Circuit Justice. It does not appear to me, that the objections taken to some portions of the depositions and evidence, are well founded; and if they were, the merits of the case before the court do not depend upon them. Two questions are presented by the bill of exceptions. First; whether the former judgment against Trafton and his sureties, for this identical money, is a bar to the present suit? Secondly; whether the present suit is, upon the other admitted facts, maintainable in point of law, against the present defendants, even if the former judgment is no bar.

The first question is not without its difficulties, resulting from the state of the authorities; not one of the cases disposed of, in those authorities, has been, in all its circumstances, precisely like the one at bar. I pass over, without observation, the point, whether there being a bond given by Trafton, for his official conduct, an action of assumpsit would lie against him for the money received by him officially; or, in other words, whether in the case of a contract by a sealed instrument for the payment of the money, an action of assumpsit would lie for the same money founded upon a simple contract. That question does not necessarily arise in the present case; and if it did, it would be necessary to compare the decision in Atty v. Parish, 1 Bos. & P. [N. R.] 104, with what was said by Mr. Justice Bayley in Tilson v. Warwick Gas Light Co., 4 Barn. & C. 962, 968, and other later cases. If the bond would per se have barred the right of suit in the present case, a fortiori, a judgment upon that bond would amount to a bar and extinguishment. In Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253, the supreme court of the United States held, that a judgment, rendered in a suit against one of the makers of a promissory note only, (it being a partnership note), was not a bar to a joint suit against both the partners. But, then the bar was not set up by the partner who was sued in the former suit, but by the other partner not sued; and as to the latter, the court thought, that as he was not a party to the former judgment, it did not bind him and would not operate as a merger in his favor. On the other hand, in Ward v. Johnson, 13 Mass. 148, the original suit was brought against one partner upon a partnership contract, and judgment obtained against him; and afterwards assumpsit was brought against both partners, and each of them pleaded the former judg-

ment in bar; and the court held it a good bar. It is observable, that in Sheehy v. Mandeville the court did not rely upon the fact, that the other partner did not join in the plea of the former judgment. In point of fact, he had been discharged as an insolvent debtor, and no farther proceedings seem to have been had against him. In Robertson v. Smith, 18 Johns. 459, the supreme court of New York held, that a joint judgment against one or more partners on a partnership contract was a bar to another action against other partners not sued; and held the case of Sheehy v. Mandeville not to be sound law. In Lechmere v. Fletcher, 1 Cromp. & M. 623, although the case turned upon some special considerations, the opinion was clearly indicated by Mr. Justice Bayley, in delivering the opinion of the court, that unless a contract was both joint and several, a judgment obtained against both would bar a judgment suit on the same contract against either of them alone; and e converso, a judgment against one of the joint contractors would be a bar of a subsequent trial against both. And he relied upon Higgens' Case, 6 Coke, 44, as fully bearing out these positions, as by implication, it certainly does.

It was in this state of the authorities that I was called upon to review and consider their force and bearing in U. S. v. Cushman [Case No. 14,908]. The conclusion to which I there arrived was, that where the contract was both joint and several, a judgment against both was no bar to a several action against each of them; and a several judgment against each was no bar to a joint judgment against both. The ground in both cases was the same; that as the parties had expressly made the contract several and joint, the merger of either in a judgment would not be a merger of the other. Since that decision, the question has arisen in England, and been directly decided by the court of exchequer in the case of King v. Hoar (Dec., 1844) 8 Jur. 1127. There the contract was a joint simple contract; a judgment had been obtained against one of the co-contractors, and then another action was brought against the other co-contractor, who pleaded the former against the other co-contractor;" and the question, upon a demurrer, was whether a judgment recovered against one of two joint contractors, without alleging execution or satisfaction, was a bar to an action against the other. The court held that it was. Mr. Baron Parke, in delivering the opinion of the court, reviewed all the leading authorities, and pronounced what appears to me to be a very sound and satisfactory judgment. It proceeds directly upon the ground, that when once judgment is given upon any demand, it passes in rem judicatam, and it cannot, upon the established principles of law, be sued for in another action. If the demand be founded on a joint contract, it is certainly merged and barred in the judgment as to the first con-

tractor sued; and if so merged and barred, it would seem equally barred as to the other, since no joint suit can be maintained thereon; and it would seem to follow, that the contract being an entirety, and merged or extinguished by the judgment as to one, might be gone as to the other by operation of law. If the latter were such alone, he might, even as a matter of pleading, insist, that the contract was joint. and, therefore, both contractors ought to be joined. If sued jointly, there could be no judgment obtained against the parties jointly, because the contract as to one would be gone by the merger; and the suit must be good and maintainable as to all the defendants, or not at all. On this occasion, the learned baron referred to the case of Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253, and expressing a great respect for the judgment pronounced by Mr. Chief Justice Marshall, said he was not satisfied with the reasoning thereof. I must confess, that for years I have entertained great doubts, as to the propriety of the same decision; and have thought the distinction taken as long ago as in Higgens' Case, 6 Coke, 44, 46, between joint contracts and joint and several contracts, to be a sound one. If, however, the present case were precisely identical with that of Sheehy v. Mandeville, I should deem my judicial opinion bound by it, and should follow it without question. But there is this distinction between the two cases, that there the bar was not set up by the judgment debtor, who was sued in the second suit; here he does set it up and rely upon it; and the identity of the contract and demand in both is admitted by the parties. The United States sue for the same debt against both parties, assuming the debt to have been originally and equally due from them as a joint contract. Now, I confess myself to be unable to perceive, how Trafton can be sued again upon a contract or debt, which has passed in rem judicatam; and if he cannot be sued again, the present suit is not maintainable, since, unless a joint judgment can be rendered thereon as upon a subsisting joint contract, the very foundation, on which the suit rests, is gone. It may be said, that Bright was neither a party to the former suit, nor a surety, and that the joint contract here sued on, is not the same joint contract sued on in the former suit. In one sense, that may be true; but then, as to Trafton, it is precisely one and the same identical debt— and that debt is certainly merged in the judgment against him. If merged as to him, it seems (as has been already suggested) very difficult to see how it can remain against Bright. The case Ex parte Rowlandson, 3 P. Wms. 405, which seems to have been overlooked in all the cases before cited, contains a doctrine strongly corroborative of what has just been stated. Lord Chancellor Talbot there said, "At law, when A. and B. are bound jointly and severally to J. S., if J. S. sues A. and B. severally, he cannot sue them

jointly; and on the contrary if he sues them jointly, he cannot sue them severally, but the one may be pleaded in abatement of the other." My judgment upon the whole, upon this point, is, that the present case is not governed by the decision in Sheehy v. Mandeville; and therefore, being at liberty to follow the dictates of my own opinion, I am prepared to hold the former judgment a bar to the present suit.

But supposing the former judgment not to be a bar, it appears to me, that, upon the facts of the case, the present action is not maintainable. It is to be taken into consideration, that there is not the slightest evidence in the case of any joint and express promise of Trafton and Bright to pay the money sued for to the government. The promise, if any arises, is by mere implication of law. In the first place, there is no privity whatsoever, between the government and Bright. He was a mere assistant of the postmaster, and received the money for him, and deposited it with his consent in their joint names. Bright never undertook with the government for the receipt or safe custody of their money. His contract was merely with Trafton, as his principal. Trafton had the sole control, and management, and right of disposal of all the monies received and deposited; and Bright was bound to obey his orders as to the disposal of them. In the next place, the argument for the United States must necessarily assume, that the monies daily received as and for postage, belonged specifically to the United States, and that the postmaster was bound to keep it specifically and distinctly separated from all his own money, and to deposit it in the name of the United States, or in the name of the proper public officer thereof. Now there is no evidence in the case, which establishes any such matter of regulation on the part of the post office department, or contemplates its existence. Indeed, the practice in the post offices is, I conjecture, from convenience, if not necessity, almost universally the other way. The postmaster does not deem the daily sums received by them as postage in coin and bank bills to belong to the government, as their specific coin and bank bills; but they treat them as sums to be debited to the postmaster, and carried to the general credit of the government as matters of account, precisely as agents, and consignees, and commission merchants are accustomed to charge themselves with the sums received by them for their principals in the course of sales made or demands collected by them. If a postmaster were, in the course of his employment, to receive by mistake base coin, or forged bank bills, or if, after having received genuine coin, or genuine bank bills, they were to be lost or destroyed without any negligence on his part, I do not understand, that he would be exonerated from responsibility therefor, unless, indeed, the

money should, by the orders of the government, be required to be kept specifically, and apart from all other money, and in a particular place, or deposited in the name of the government in a particular bank. Neither do I understand it to be a wrongful conversion of the monies of the government, for a postmaster to deposit the monies, received by him for postage, in his own name in a bank, unless the government should, by some regulation, prohibit it, and require the same to be deposited in its own name. There is nothing in the present record, which leads to any such conclusion. And no act of congress has been brought to the notice of the court, which imposes any such regulation. In former times, I believe, it was a general practice among the collectors of the customs, to make deposits of the public monies in their own names; but of late years, that practice has been in a great measure put an end to, by regulations and orders from the treasury department. I entirely concur in the opinion of the district judge, that by the deposit of the monies in a bank or banks, in the name of the defendants, they made these monies their own. But if made their own by such deposit, it must be because it was a lawful act; for if it was an unlawful act, or conversion of the property of the United States, then the monies did not become their own; but remained the monies of the United States, as Bright must be presumed to have known all the facts. My difficulty is, how to come to the conclusion, that if the deposit was a lawful one, any joint contract with the government can be inferred from the mere fact, that the deposit was made in their joint names. It may here have been made, and for aught, that appears, was, in fact, made by the orders and direction of Trafton, for his own personal convenience, and the more ready disbursement of the monies for purposes either of his own private convenience, or connected with the duties of his office. I am unable, therefore, to concur in the instruction of the learned judge, that the deposit of the monies in the joint names of the defendants, made them personally and jointly answerable in the action.

In the next place, there is a most important fact stated in the case, "That the amount paid out of the said post office between the 1st day of April, 1837, and the 30th day of June, 1839, (between which periods the balance due to the government must have accrued), in quarterly balances, and for clerk hire, and other incidental expenses of the office, far exceeded the amount deposited in the banks to the credit of Trafton and Bright during that time. But there was more deposited in the said banks during that time than accrued to the government." Now, upon this uncontradicted statement the government cannot be entitled to recover the monies, which were so de-

posited, as monies belonging to the United States, unless it is shown by the government, that the monies have been misapplied to other purposes than such payments and expenses as above stated; for Trafton had a perfect right to apply those monies to reimburse himself for such payments and expenses, or to treat them as his own when he had paid or advanced an equivalent amount for the government. As to the monies received and not deposited, the case finds this important fact also, that "it was proved, that Trafton had the general oversight, superintendence, and control of the office, and free access to, and disposition of the money collected therein." He, therefore, must, in the absence of all contrary proof, be presumed to have had the sole possession, custody, and disposition of all the monies not so deposited. Bright was merely his assistant, and the receipt of the monies by him as such assistant, was a receipt thereof for Trafton, and not jointly for himself and Trafton. In general, sub-agents, acting ex contractu, are responsible only to the immediate agents who employ them, and not to the principal, for there is no privity between them. See Story, Ag. §§ 203, 205, note, §§ 217a, 387. And there is no necessary exception to this rule in the case of public officers, although under particular circumstances an exception may arise. But what I proceed upon, is, that there is no proof in the case, that Bright ever received or appropriated to the joint use of himself and Trafton any of the monies not deposited; and it is quite consistent with the whole evidence in the case, that there never was any such receipt or appropriation on their joint account. It appears to me, therefore, that the charge of the court puts the case to the jury upon this point, as if there were evidence before the jury competent in point of law to enable it to infer, that there was such a receipt or appropriation of the monies upon joint account. The defendants also asked the court to instruct the jury "that if they were satisfied that the said Trafton used the money so collected in the post office on his own account, so that not enough was left to pay the plaintiff's (the United States), the said Bright would not be answerable." Now I confess myself to be under some embarrassment as to the true nature and interpretation of this instruction. If it meant, that, if Trafton had used the money so collected on his own account, and that Bright had not received or appropriated any part of the deficit on joint account, then Bright was not answerable in the action, then it appears to me, that it ought to have been given. But if it meant, that Bright would not be liable for any part of the deficit, even if he had received or appropriated it on joint account, then it might be a question of more difficulty, and perhaps, stated in so abstract a form without reference to the other facts in the case,

it might have been properly referred; which interpretation the learned judge gave it, does not appear.

Upon the whole, my opinion is, that the judgment ought to be reversed; first, because, the former judgment was a bar to the present suit; and secondly, because, upon the admitted facts of the case, the charge of the court is not maintainable, in point of law, in the abstract form in which it is given.