## Case No. 14,440.

UNITED STATES v. AMES et al.

[Trans. Rec. Sup. Ct. U. S. Oct. Term. 1878, p. 4145.]

Circuit Court, D. Massachusetts. April 4, 1876.[1]

RES JUDICATA — JUDGMENT AGAINST PARTNERS — EQUITY JURISDICTION—RELEASE BOND IN ADMIRALTY.

[1. A judgment against one partner is a bar to a subsequent suit against the other partners, though the latter were dormant partners at the time of the contract, and were not discovered by the plaintiff until after the judgment.]

[2. The fact that a creditor of a partnership has lost his remedy at law against some of the partners by recovering a judgment against one partner alone, in ignorance of the existence of the partnership, is no ground for affording relief against them in equity.]

[3. After the remedy has been exhausted against a principal and his sureties upon a bond or stipulation in admiralty for the release of the res, and the process issued against them is returned unsatisfied, the court cannot follow the res, or its proceeds, into the hands of any persons to whom they may have passed.]

[This was a bill in equity brought by the United States against Oakes A. Ames and

[1] [Affirmed in 99 U. S. 35.]

Oliver M. Second, executors of Oakes Ames, deceased, and Peter Butler.]

SHEPLEY, Circuit Judge. Since the decision of the supreme court of the United States in Mason v. Eldred, 6 Wall. [73 U. S.] 231, overruling Sheey v. Mandeville, 6 Cranch [10 U. S.] 253, the doctrine may be considered as fully settled in all the courts of the highest authority, both in this country and England, that a judgment recovered against one of two partners is a bar to a subsequent suit against both, though the new defendant was a dormant partner at the time of the contract, and was not discovered until after the judgment. The question is elaborately considered in King v. Hoare, 13 Mees. & W. 495, and the conclusion reached that the original demand had passed in rem judicatam, and could not be made the subject of another action. In Trafton v. U. S. [Case No. 14,135], Mr. Justice Story refers to the case of King v. Hoare, as one in which the court of exchequer pronounced what seemed to him a very sound and satisfactory judgment. "No principle," say the court, in Smith v. Black, 9 Serg. & R. 142, "is better settled than that a judgment once rendered absorbs and merges the whole cause of action, and that neither the matter nor the parties can be severed, unless, indeed, where the cause of action is joint and several, which, certainly, actions against partners are not." To the same effect are the decisions in Robertson v. Smith, 18 Johns. 459; Ward v. Johnson, 13 Mass. 148; Wann v. McNulty, 2 Gilman, 359. Mr. Justice Field, in Mason v. Eldred [supra], says: "The general doctrine maintained in England and the United States may be briefly stated. A judgment against one, upon a joint contract of several persons, bars an action against the others, though the others were dormant partners of the defendant in the original action, and this fact was unknown to the plaintiff when that action was commenced. When the contract is joint, and not joint and several, the entire cause of action is merged in the judgment. The joint liability of the parties not sued with those against whom the judgment is recovered being extinguished, their entire liability is gone. They cannot be sued separately, for they have incurred no several obligation. They cannot be sued jointly with the others, because judgment has already been recovered against the latter, who would otherwise be subjected to two suits for the same cause." When, therefore, judgment was rendered against Mansfield, the principal, and his sureties, on what is described in the decree and record as the "release bond," which was substituted for the cotton which had been seized and libeled in the district court, the original demand, if it had ever existed against Mansfield, Butler, and Ames, as copartners under the name of A. S. Mansfield, passed in rem judicatam, and if the United

States subsequently discovered that Butler and Ames were partners, and might have been joined in the "release bond," or the judgment rendered upon it, it was too late to proceed afterwards against Butler and Ames, who were never severally liable, and who could not be proceeded against jointly with Mansfield, against whom judgment had already been recovered.

The remedy at law having been lost, the question is then presented whether such a state of facts presents a case which entitles the party to relief in a court of equity. This precise question was answered in the negative by Chancellor Kent, in Penny v. Martin, 4 Johns. Ch. 566; and the authority of that eminent jurist, and the force of the reasoning in the opinion in that case, would seem to be conclusive upon this point. The omission to make the dormant partners parties in the action of law arose, according to the allegation in the bill in Penny v. Martin, from ignorance of the fact that they were such partners. "Is that ignorance," asks the chancellor, "a sufficient ground for transferring to this court jurisdiction of a matter properly, if not exclusively, cognizable at law? The ignorance might have been removed by due vigilance and inquiry, and perhaps by the assistance of a bill of discovery here. The plaintiffs have no particular equity entitling them to relief. Ignorance, as Lord Loughborough said, is not mistake. They never inquired whether R. and M. had secret partners, and they gave the whole credit to them. If they have now got into embarrassment and difficulty, in respect to their legal remedy, by pursuing the ostensible partners at law, without such inquiry, I do not know of any principle that will authorize this court to take jurisdiction of a case, where the remedy was, in the first instance, full and adequate at law, because the party may have lost that remedy by ignorance founded on negligence, not on accident or mistake, or on any misrepresentation or fraud."

In the appendix to the brief of the learned counsel for the complainant, the remedial jurisdiction of a court of equity is invoked upon the further ground that, after the cotton which had been libeled had been condemned, and after the final process against the stipulator and his fide jussores had been returned unsatisfied, the complainants were then for the first time informed that Ames and Butler, together with Mansfield, the claimant, had, in the copartnership capacity, received the proceeds of the cotton that had been seized and condemned, and which had been previously surrendered upon the substitution for it in open court of what the decree of the court called a "release bond" (which it appears to be in form), and which the complainants style "a stipulation." This presents the question whether, after the remedy had been exhausted upon the process issued against a principal and his sureties, or fide jussores, in a bond or stipulation given in an admiralty or prize court, upon the surrender of the res to the claimant, and when that process is returned unsatisfied, the court may resume the possession of the res, or follow the res and the proceeds of its sale in the hands of any party into whose possession it may have passed. I am unable to find any case in which this has been done by an admiralty or prize court. I do not find, anywhere, that these tribunals, after a decree against the stipulator and his fide jussores, or the principal and sureties on the bond, claim or exercise the right to resume the possession of the res, which has been once surrendered, upon the entering into the stipulation or filing the release bond ordered by the court. On the contrary, Dr. Lushington says: "But the effect of taking bail is to release the ship in that action altogether. It would be perfectly absurd to contend that you could arrest a ship, take bail to any amount, and afterwards arrest her again for the same cause of action. The bail represents the ship, and when a ship is once released upon bail, she is altogether released from that action." The Kalamazoo, 9 Eng. Law & Eq. 557. See, also, The Union [Case No. 14,346]; The White Squall [Id. 17,570].

Another ground of equitable jurisdiction relied upon is that the estate of Oakes Ames, in the hands of his executors, is insufficient to pay all the debts due from the estate, and that the United States are entitled to a priority of payment out of the assets; but that ground fails in this case, there being no priority to be enforced where there is no claim. It follows, as a necessary corollary from the principles above stated, that, admitting all the allegations in the bill to be true, the bill cannot be sustained; and, accordingly, the demurrer is sustained, and the bill dismissed.

[The case was taken on an appeal by the United States to the supreme court, where the decree of this court was affirmed, Mr. Justice Bradley dissenting. 99 U. S. 35.]