THIS case came up on a demurrer. The declaration was in assumpsit for the hire of a steamboat, to which the defendants pleaded the statute of limitations and to which the plaintiff replied, precludi non,
etc., because the several causes of action in the declaration mentioned accrued against the said defendants jointly; that the said George A. Parker before and at the time when the same and each and every of them accrued to the said plaintiff, was out of the State, to wit, at a place unknown to the plaintiff; and that he afterwards, to wit, on the first day of January, A. D., 1875 came from without the said State into said State, which was his first coming into it thereafter in such manner that by reasonable diligence he could have been served with process. And that the said plaintiff commenced his said action against the said defendants within three years after his the said defendant, George A. Parker's said coming into said State. To this replication the defendants demurred generally and especially, and assigned the following causes of demurrer: 1. That it sets forth that one only of the said co-defendants was out of the State before and at the time of the accruing of the said causes of action, which fact, if true, would not bring the plaintiff's action within the saving of the statute implied by him. 2. That his said replication and the facts therein stated relate to only one of the said co-defendants, and states no sufficient reason why the statute of limitations has not barred the said action against the other defendants.
Gray for the plaintiff in demurrer. The words of our statute, unlike the English statute, are in the singular number, and it may well be doubted whether it was intended to apply to such a *Page 545 
case as this, in which there are four co-defendants, only one of whom was beyond the reach of process and out of the State when the cause of action accrued and until after the original limitation of the statute had elapsed; and it was so held under a similar statute in the State of New York, and also that in an action of assumpsit against several defendants, it is no answer to a plea of the statute of limitations that one of them within six years from the accruing of the cause of action departed from the State and continued absent until the commencement of the suit, sell the persons liable upon a joint contract must depart from the State in order to arrest the running of the statute against the demand. Brown v. Delafield, 1 Denio., 445. And it was so held in Bruce v. Flagg, 25 N. J., 219, and in Sheey v. Mandevilleet al., 6 Cranch., 253.
Bradford for the defendant in demurrer. The question is, when the contract and cause of action are joint, and not both joint and several, does the absence of one of the several defendants from the State at the time of the accruing of the cause of action, save the bar of the statute of limitations against the other defendants who were in the State when the cause of action accrued, and have been subject to the process of the court from that time until the suit was commenced? The law is now so settled, and the cases cited on the other side have been overruled by later decisions. That of Brown v. Delafield, 1 Denio., 445, by Denny v. Smith, 18 N. Y., 567, and Cutter v. Wright, 22 N. Y., 472, and the case of Sheey v. Mandeville et al., 6 Cranch., 253, by Trafton v. The United States, 3 Story, C. C. Rep., 646, and by Mason v. Eldred et al., 6 Wall., 231. And the reason of it is being jointly liable only, they must all be sued jointly, and if a judgment be recovered against one of two joint creditors, it is a bar to an action against the other before satisfaction. King v. Hoar, 13 M. W., 493. Joint debtors must be jointly sued. If all are not sued, it can only be pleaded in abatement, and if the defendant fails to plead it in abatement, judgment will be given against him. Robertson v. Smith and Others, 18 Johns., 459. A judgment recovered against one partner is a bar to a *Page 546 
subsequent action against both. Smith and Another v. Black, 9 S. R., 142. To an action against two on a joint promise, the defendants pleaded a former judgment recovered against one of them on the same promise, and it was held a good bar. 13 Mass., 148. It is also well settled in the English as well as the American courts, where it has been held that under stat. 4 Anne, chap. 16, § 19, if a right accrues against several persons, one of whom is beyond the seas, the statute of limitations does not run till his return, though the others never were absent from the kingdom. Fannin v. Anderson, 53 E. C. L. Rep., 810; Town v. Mead, 81 E. C. L. Rep., 123. At common law the only course to pursue in case of a joint contract, and a joint suit as it must be against all of the defendants when there are two or more of them, and one of them is out of the kingdom, is to sue out the writ against them all and have it served on all of them within the kingdom, and returned not served or not arrested as to the other, and then to proceed by due course of law there to outlaw him, which must be done before any declaration can be filed or anything further can be done in the prosecution of the action against the others, but when the process of outlawry has been completed with a reference to him, the plaintiff proceeds, and if his evidence is sufficient recovers judgment against the others. But the process of outlawry is unknown in the courts of this State, and of every other State in this country, and therefore there is no method of doing it in that or any other way under our laws or practice.
Gray. According to the obvious meaning of the statute, the saving referred to does not support the replication; for the design of it was only to save the right of action against one or more joint debtors when he, or all of them, if more than one, was or were out of the State at the time the cause of action accrued. It has been decided in one of our States that in an action on a joint contract against two or more defendants a jugdment may be recovered against one or more, though the statute of limitations has barred the action against others. Town v. Washburn et al., 14 Mines. 268. *Page 547 
The question raised by the pleading in this case is: Does the act of limitations begin to run against a joint contract until the return of a co-contractor who is out of the State at the time the cause of action accrues?
This is an action of assumpsit for the hire of a steamboat, the narr. being composed of the common counts. The plea relied on is the act of limitations, to which there is a replication of the absence of Parker, one of the defendants, and his return and suit within the statutory time thereafter. The defendants demur, and the plaintiff joins therein; so that the question is as before stated.
It may help to a proper understanding of this question, to consider the state of the law originally with reference to suits upon contracts, and the changes made in it; also the law with respect to suits on joint contracts, and to outlawry, and pleas in abatement. With such law before our minds, we shall be better able to comprehend and decide it.
Formerly there were no statutes of limitation of actions; but courts, however, instructed juries to presume a debt to be paid where no suit had been brought upon it for twenty years, or recognition of it made in that time. This was in analogy to other legal presumptions. Such state of things continued until the year 1683, when the statute of 21 James I., chap. 16, was passed, the third section of which prohibited the bringing of certain actions (including that in this case) after the expiration of six years from the time the cause accrued; with a saving as to infants, persons non compos mentis, femes covert, persons imprisoned or beyond seas, so as they took their actions within the above time after the impediment ceased, etc. This was the law, without any change, until the fourth year (1705) of the reign of Queen Anne, twenty-two years afterwards, when chapter sixteen of her reign was passed, the nineteenth section of which provides for the case of absent defendants, as follows: "That if any person or persons" against whom there should be any cause of action of trespass, etc., "or any of them be, or shall be at the time of any such cause or suit or action given or accrued, beyond the seas, that then such person or persons, who is or shall be entitled *Page 548 
to any such suit or action, shall be at liberty to bring the said actions against such person and persons, after their return from beyond the seas, within such times as are respectively limited for the bringing of the said actions" by that act and the act of James. These statutes form the law of England to this day, we believe, with respect to the limitation of actions.
Whether the statutes of James and of Anne were recognized as in force in this colony we have no means of knowing; but seeing that the legislature of that time passed an act on the subject of them, it is to be supposed they were not. In the 15th of Geo. II. (1742) a statute was enacted limiting the time for bringing personal actions (with certain exceptions not necessary to be stated) to three years, with the saving (as in that of James) as to absent or disqualified plaintiffs, and (as in that of Anne) with respect to absent defendants (Del. L., Vol. I., p. 228). The language of the sixth section of that enactment is in these words: "And if any person or persons against whom any of the causes of action before mentioned shall arise, shall at the time of the cause of suit or action arising, or afterwards before the time of bringing such action be expired, be beyond seas, or go out of this government, then the person entitled to such suit may bring an action after the return of such person, so as he bring the same within such time as is before limited by this act." Afterwards, on the 12th of April, 1773, a supplement to that act was passed which conformed the limitation for suits by plaintiffs to the statute of James, viz., six years, but continued the provision with respect to absent defendants — that is, allowing three years after return to bring the action — using the same language as above quoted (Ibid., 324). And on the 4th of July, 1792, the State legislature passed an additional supplementary act, limiting the time for bringing all personal actions whatever, except debt founded on record or specialty, and accounts between merchant and merchant, to three years after the cause accrued, with the saving as to infant plaintiffs, femes covert, non compotes
or imprisoned; but without that of plaintiffs "beyond sea or out ofthe State," but preserving the same time as before, and by the same language, with respect to absent defendants. (Del. L. Vol. If., p. 1031.) *Page 549 
This was the state of the law down to 1829, when the compilation of statute law known as Hall's Digest was reported to the legislature and passed. At page 397 of the Digest is, the limitation law, the fifth section of which is in effect as before, except that mutual and running accounts are substituted for accounts between merchant and merchant, and that a new provision is inserted making six years the limitation for suits in the case of "a promissory note, bill of exchange, and acknowledgment under the hand of a party of a subsisting demand." The ninth section is a proviso, and reads thus: "Provided, that when a cause of action arises in this State, if the person liable to such action be not an inhabitant of this State at the accruing of such cause, or abscond or remove from this State before the expiration of the time allowed by this act for bringing such action, the time during which such person shall have been out of this State shall, in applying either of the limitations of this act, be deducted; and in every such case at least one year from the return of such person into this State shall be allowed for bringing such action." This section introduced very important changes, confining the saving as to defendants to cases when the cause of action arose in the State, and apparently using the term "not an inhabitant" as equivalent to person beyond seas, and also including the case of an absconding or removing debtor, so as to provide for objection that such a one was not a person beyond seas within the meaning of the prior acts. It will be observed also that the words "or persons" used in the beginning of the sections of the colonial acts of 1742 and 1773 are omitted in Hall's revision. This was not to prune a redundancy, as appears by the preface to his work, but because, no doubt, he considered the singular word to include its plural, when necessary to the sense. But it is noticeable that the words "or any of them," occurring in the statute of Anne, after the designation of actions do not appear in our colonial acts. Lord Denman, in Fannin v. Anderson, 53 E. C. L., 811, thought they referred to the actions mentioned in the former, but Justice Maule, in Towns v. Mead, 81 E. C. L., 123, took a different view, and referred them to the words "person or persons" in the beginning of the *Page 550 
section, and gives a reason which seems conclusive of the correctness of such view. The different actions named are in the singular number, separated by the disjunctive conjunction or; whereas, the word "persons" being a plural noun, it was appropriate to the construction given the statute, that the application of the words "or any of them" should be to persons. It would seem that Justice Maule, in the common pleas, did not intend to rest his opinion upon the sole ground taken by Lord Denman in the Queen's Bench, that the statute of Anne was intended to dispense with the tedious and expensive proceedings of outlawry in the case of an absent co-defendant.
If the opinion — that Justice Maul took the true view of the words "or any of them," used in the statute of Anne, be correct — and we think it is — then the omission of those words from our statutes is very significant, and would seem to point to the conclusion that the running of the statute would not be suspended if part of the co-defendants should be absent when the action accrued, others remaining in the State. Those words were intended to apply to actions, or persons (we think the latter), and could not have been omitted to prune redundancy; for, as applicable to the plural noun, persons, they could not have been a redundancy, their use being necessary to apply the statute to the case where one, or some, of several defendants was absent.
It seems to have been an opinion about which there was no difference in the minds of the English judges, that the object of the statute of Anne was to dispense with proceedings in outlawry where there were several defendants, and some of them beyond sea. At first it would seem strange that no case occurred calling for construction of the statute of Anne for a hundred and forty years; but it is not so, when we take into consideration the fact that a plaintiff could always proceed against an absent defendant by outlawry simultaneously with his proceedings against resident defendants, in which case no plea in abatement could be sustained. There was, therefore, no ground for holding the act to apply where all the parties were not absent. When however, in 1834, the statute 3d and 4th William IV., chap. 39, § 8, was passed, abolishing pleas in *Page 551 
abatement unless a co-defendant was within the realm, there was no occasion to invoke the statute; and then the act applied, and the joint liability was, virtually, turned into a several one — for Fannin v. Anderson and Towns v. Mead, are each actions against one only of several joint defendants. It is true in the last case the defendant was a survivor; but in the former both the contracting parties were alive. Since the latter statute, all contracts are joint and several virtually — no plea in abatement for non-joinder being allowed. We must treat these considerations as present to the mind of the English judges when the above cases were decided.
But the statute of Anne was, we think, never in force in this State; nor was that of James (though it obtained in the province of Pennsylvania); having been passed in 1713. It is not certain, either, that proceedings in outlawry were ever taken here. And it is all the more likely they were not, because they were wholly unnecessary.
When in England, before the construction given the statute of Anne, it was necessary to sue joint defendants, all had to be included; for otherwise, upon a plea in abatement the suit would be quashed. They were therefore included in the writ. If, by the return, it appeared that some one or more could not be found, proceedings against them to outlawry had to be taken, and no declaration was filed until they were complete; and it was entitled as of the term of the completion of the outlawry. Then all were included in it, and the case went on precisely as if the absent defendant had appeared. Of course no plea in abatement would be proper in such case, for the suit would be against all, the declaration against all (2d Sellon's Practice, 279); and, the outlawry proceedings having been completed against the absent one (and set forth in the narr.), which authorized seizure of his goods, person, and the issues of his lands under appropriate writs of execution, judgment in the action would be rendered against the resident defendants; and thus the plaintiff would have the complete remedy, the value of which was so important with Lord Denman in his opinion in Fannin v. Anderson. In fact, that was all the remedy he could have before the statute of Anne. *Page 552 
That the absent defendant might reverse the proceedings in outlawry was no objection to the quality of the remedy, because he could only do this, before judgment, by appearance and putting in special bail, and after judgment by the plaintiff acknowledging satisfaction on the record, on the payment of the money into court. (lb., 297). Nobody thought of appealing to the statute of Anne as suspending the statute of James, where there were absent defendants, until the passage of the before-mentioned act of 3d and 4th William IV., § 8, abolishing pleas in abatement, prevented a defendant from taking advantage of the non-joinder of a co-contractor. Then the idea seems to have arisen that the statute of Anne was meant to supersede the necessity of outlawry; and inability to plead in abatement made joint contracts several also. So that, where the suit was against an absent defendant who returned, he could no longer plead a resident defendant who might have been sued; and, where against a resident defendant, in answer to his plea of the act, it was replied that it would deprive a plaintiff of his complete remedy if it were allowed, that proceedings in outlawry had been superseded by the statute of Anne, which was intended to give a plaintiff a better remedy than he had theretofore. But the result of the decisions of Fannin v. Anderson and Towns v. Meade never could have been reached if pleas in abatement had not been abolished, and the theory adopted of the supersedure of proceedings in outlawry. I have thus attempted to account for the decisions relied upon by the plaintiff in his argument upon the demurrer.
But, in this State, the statute of Anne never had force; and, as I have pointed out, our colonial acts of limitation, and those passed since 1776, do not follow its language. The words "or any of them," whether applicable to actions or persons, are not to be found in them; and, as there is no rule, or principle of construction, which supplies such language in the case of actions ex contractu against joint contractors, we should not be justified in reading our statute as containing them. The proper interpretation of our act would seem to be the opposite of that given by the English courts to that of Anne, and requires us to hold *Page 553 
that the former is not suspended in the case of joint contractors unless all of them are absent from the State at the accrual of the cause. This is, unquestionably, true in the case of written contracts, which with us, when made by more parties than one, are several as well as joint unless otherwise expressed (Rev. Code, 357); and we think in effect true also of verbal contracts as this is; because the plaintiff has, by our statute law, the same remedy, in effect, in cases of absent debtors, as prevailed in England prior to 1705.
By a code of laws published at Hempstead, Long Island, on the 1st of March, 1664, by authority of the Duke of York (who at that time held a grant from his brother King Charles II. of all the territory between the St. Croix River and the eastern side of the Delaware Bay (which was taken to include the settlements or colony on the western side also,) the writ of attachment as well as summons was given to secure the appearance of a defendant to a suit, by the former of which his goods and chattels, lands and tenements were attached. (Duke of York's Laws, 10). Afterwards, on the 20th of May, 1699, under the proprietary government of Penn, and whilst there was one Legislature for the province and these counties, a statute about attachments was passed, by a proviso of which it is declared as follows: "Provided always, that no writs of attachment shall hereafter be granted against any person or persons but such only as at the time of the granting of such writs are not residing within the province or territories, or are about to remove into some other colony or place, or shall refuse to give sufficient security to the plaintiff for the debt or demand." Then follows a clause, that no attachment shall be laid on any lands where there are goods or chattels to be attached, and that the house or plantation shall be the last attached. Immediately after this, the following: "Provided also that after judgment obtained by the plaintiff upon any attachment against non-residents, the plaintiff must, before execution is awarded, find sureties who must undertake for the plaintiff that if the defendant in the attachment shall within a year and a day then following come into court and disprove or avoid the debt recovered by the plaintiff against him, that then *Page 554 
the plaintiff shall restore to the defendant the money attached by plaintiff and condemned, or so much thereof as shall be disproved, or else that they shall do it for him." (Ib. Charter and Laws of Penna., 290). This provision obtains, in substance, in this State to-day; but the plaintiff is now not required to give the security until he applies to receive the money raised by the execution issued on the judgment (Rev. Code, 642). Our laws thus furnish a plaintiff with the same remedy in effect that the English creditor had by the process of outlawry before the statute of Anne. This is admitted by the counsel for the plaintiff here. Under both, seizure and sale of goods and chattels could be made, and (here) lands and tenements; though there
(where lands could not be sold), an appropriation of their issues could be secured; and upon each of them, writs of fieri facias andcapias ad satisfaciendum could be issued, the same according to our statutes as on other judgments" (1 vol. D. Laws, 467, 468; Hall's Dig., 50, 51; Rev. Code, 642). Outlawry in England, and judgment in foreign attachment here, had, then, the same quality; they could be executed like any judgment, and had the same scope. Having proceeded to outlawry there, the plaintiff then filed his declaration and recovered judgment by due course of law. This was a remedy, therefore, as complete as if all had been actually taken; but there it was attended with great expense and much complication, while here nothing was more simple than the recovery of judgment in foreign attachment; and no proceeding to recover a debt could be more speedy, or attended with less expense. It was the appropriate means to compel the appearance of an absent defendant; or, failing that result, to subject his goods and chattels, lands and tenements to the plaintiff's demand, as much as they would be in a judgment recovered on service of process. The same course of declaring in the suit against all, would be as pointed out in 1 Wils., 78, and by the form laid down in the 10th vol. of Wentworth'sPleadings, at page 384. Everything can be effected under our statute that could have been in England before the statute of Anne, and by much shorter steps. First you sue all parties, and, in the case of the absent defendant, seize his goods and lands with the *Page 555 
foreign attachment against him, and then file your narr. according to the form in Wentworth and obtain judgment to be executed against all alike — that in foreign attachment having, by the statute, like process of execution as other judgments (Rev. Code, 642). Our foreign attachment law is founded upon that of the custom of London — the feature of plaintiff giving security before he can appropriate the money raised, and the mode of execution, being the same. They are both in the nature, to the extent of seizure of property in the first instance, of proceedings in rem; but they are more than that, as the ultimate process, awarded to each, shows. Proceedings to outlawry against an absent defendant, when completed, seem to be the same in effect as judgments here in foreign attachment, being equally executable against goods and chattels, and the person also.
Let us consider further the difference between the statute of Anne and the saving in the 14th section of our act of limitations (Rev. Code, 730). As before observed, the words "or any of them" occurring in the former are not found in the latter. They are so important that there seems no risk in saying, the decisions of Fannin v. Anderson and Towns v. Mead would hardly have been made without their being where they are, nor then, with the law unrepealed respecting pleas in abatement — or, rather, I should say, without the act of 3d and 4th W. IV., chap. 42, § 8, abolishing them. I have already pointed out that the statute does not appear ever to have been in force here. We have never been under any other law of limitation than that created by our own statutes, in the colonial times, and since. As, however, they were evidently framed after the models of those of James and Anne, it cannot be unreasonable to infer that where words so important in a saving clause as the words "or any of them" (referring in the statute of Anne, as we cannot doubt, for the reasons above given, to persons and not actions), are left out or omitted, it must have been done by design, and for the purpose in cases here, of preventing a bar to the statute unless all the defendants were out of the State at the accrual of the cause of action, where there were more defendants than one. And we are the more satisfied of this, upon reflecting, that in the times *Page 556 
when our acts were passed, the legislative body was always composed of citizens of the best intelligence, several of whom were lawyers of the highest rank in their profession. A consideration of the statutes of those days will satisfy any one that those who passed them were in every respect qualified for their duties. Now it cannot be that the important language referred to, was omitted from the saving with respect to defendants in the limitation acts, except by design. Our legislative bodies do not seem to have had such regard for plaintiffs as it would seem from Fannin v. Anderson was had in England; they doubtless contemplated as well the hardship upon a resident defendant to result from a statute suspending the operation of the section imposing the limitations, until it suited his absent co-defendant to return from out of the State, or he should happen to die. Then it is certainly no greater hardship upon a plaintiff in requiring him to proceed, where one or more of the defendants is in the State, within the statutory time, than upon a resident defendant in holding him liable to an action for three years after the return or death abroad of a co-defendant who left the State before the action accrued. Indeed, it would seem to be less, in view of the fact (not an argument, however, in favor of our construction of the law), that a defendant may be followed into any State of the Union, and sued the same as in this State, and with the same effect — the principle of the common law having universal application in these States. It would be harder that a solvent resident defendant should be liable to be sued at any time during the absence of an insolvent non-resident co-defendant, and three years after his return, upon a claim like this, than that a plaintiff should be obliged to bring his suit (to save his remedy against an absentee debtor), and keep it alive by continuances, where the resident debtor had no property out of which a judgment could be levied. Be that as it may, a plaintiff is no worse off here by our decision on our statute, than he was in England before the statute of Anne, in case a co-debtor or co-defendant was beyond seas at the accrual of the cause of action, and the act of 3d and 4th Will. IV. abolishing pleas in abatement. If our act were like that of Anne, and we had an act similar to that of *Page 557 
William, we might feel constrained to follow Fannin v. Anderson and Towns v. Mead. As it is we give our act that interpretation we feel it requires — that it runs in favor of all defendants, in case of a joint contract, when any of them are in the State when the cause of action accrues. We think, therefore, that the replication in this case does not present a sufficient answer to the plea of the Statute.
Houston, J. The cases cited by the counsel for the defendant in demurrer and the plaintiff in the action clearly show, and there is now no question, that in case of a joint contract, and not both joint and several, as this agreement would have been under our statute had it been made in writing, at common law, all the contractors must be joined as co-defendants in the action, and if any one or more of them be omitted, it may and should be pleaded in abatement, or judgment must go against the number sued, for the non-joinder of the others, even though it appears it will not be a ground of nonsuit, or of a motion in arrest of judgment, or for a writ of error; and the joint contract of all of them in that case will merge in the judgment and be extinguished in it, and no action at law will afterwards lie upon either the contract, or the judgment, against those or any of them who were included in the suit. This as a general principle of the common law has now been long well settled; although there are some special exceptions to it, as where such a joint contractor is minor, or has since been discharged in bankruptcy or insolvency, when a nolle prosequi may be entered as to such, who have been sued in the action, and judgment had against the other defendant in it.
At the common law the learned counsel is also equally well sustained by the authorities referred to by him, in the further position assumed, that in a joint contract like this, if any of the contractors cannot be arrested or served with process in the institution of the action, the plaintiff must proceed to outlawry and complete it against him, before he can recover judgment against the other joint contractors, his co-defendants in the suit who have been served with process, and appeared to the action. *Page 558 
That is the only course to be pursued at common law in such case, and it is the only course still pursued in England, I believe, although they now have many statutes there in relation to their original common law procedure in such actions. He admits, however, that the process of outlawry is wholly unknown in the practice of the courts of this State, and never has been considered a part of the common law as recognized in it, and he therfore contends that there could have been no recovery of judgment in this case until all of the joint contractors had been served with process, in a joint suit upon the contract against them all.
But have we no practice in this court in such cases which, in effect, serves the purpose of process of outlawry at common law when completed, in any case? I think we have, for it has long been the established practice in this court, without any other statute or statutes on the subject than such as early conferred on the courts of the State the general power to make regulations for the returns of all judicial writs, entering rules thereon, and on the sheriff, filing declarations in vacation, and all other rules necessary for bringing forward and expediting the trial of causes and finishing executions, Dig., 1829, p. 105, to issue the original writ, in such an action against all of the joint contractors, and on a return of service on one or more of them, and non est as to one or more, and on the appearance only of those served with the writ, to file the declaration against the latter only, noting in the commencement of it that the writ was sued out against all of them, but the other or others had been returned non est
or non sunt, upon it, and thereupon to proceed to the recovery of judgment in the action against such of them only as had been served with the process. And according to our practice in such cases, which is much more expedient, expeditious, and less expensive than process of outlawry under the English practice, such a judgment would constitute a good and valid judgment against them only, but it would not be a judgment against any one of the joint contractors returned non est to the writ. And in this respect it has the same legal effect as process of outlawry, when prosecuted to completion and conviction, because the plaintiff *Page 559 
recovers no judgment against the outlaw in such a case, nor in any case whatever, but the judgment, when recovered, which can only be after the proceedings in outlawry have been determined is solely binding on the joint contractors who have been arrested, or served with process in the suit.
As it was, therefore, in the power of the plaintiff in this case, in this method to have commenced a suit on this contract against all four of the joint makers of it, at any time within three years after the accruing of the cause of action upon it, and to have had the writ served on the other three defendants in it and to have maintained the action and recover judgment against them for his whole demand in it, without waiting for the other joint contractor to come into the State after remaining out of it for several years longer, so as to be served with the same writ with them in the commencement of the action against them all, as has been done in this case, where was the necessity, or the propriety, of his delaying his action and recovery of judgment in this manner against the other three defendants for so long a period of time, because the fourth was. out of the State, when he could, at any time within three years after the cause of action accrued, have sued and recovered judgment against the other three in accordance with this well-established practice of this court in such a case? Under this method of proceeding and practice in such cases the saving of the plaintiff's right to sue so long as Parker was out of the State, and until three years after he should first come into it in such a manner as by reasonable diligence he could be served with process, can have no application whatever to the other three contractors, although the contract was joint only, because as we have before seen, he labored under no such disability of suing and recovering judgment against them for the whole amount of his claim. On the contrary, as I have before remarked, the plaintiff had it in his power, as they were all amenable to the process of this court, during that period, to do this at any time within the first three years after the cause of action accrued on the contract. And as their liability to be sued in this manner is not within the letter nor the meaning of the saving in question, I do not think the present action is saved by it, against them, *Page 560 
or can be maintained against the present defendant in it, but is barred by the plea of the statute of limitations against him. Of course each of the defendants in a joint judgment is liable for the whole amount of it; that is to say, an execution issued upon it, which must also be joint and follow the judgment, may be levied upon and collected out of the property of either of them; and one or more after paying it could maintain an action against Parker for contribution, which would be another action against which the act of limitation would begin to operate from the time the cause of it accrued, subject to the same saving so long as he continued out of the State.
They have long had a special statute in New York in regard to such cases, as the following note will show, which I take from an American edition of Chitty on Pleading, published in 1819: "At common law, when the plaintiff sues two or more defendants on a joint obligation, and all cannot be arrested, it is necessary to proceed to outlawry against such as cannot be brought into court; for the plaintiff cannot declare against those who have been arrested, until he has outlawed the others, which must be suggested in the declaration; and we have seen that it is not at the option of the plaintiff to bring his action against some of those who are jointly liable to him on a contract, but that all the joint obligors must be named in the process. In the State of New York these difficulties are obviated by the 13th sect, of the act for the amendment of the law, 1 R. L., 52, which provides that all persons jointly indebted to any person on any joint obligation, contract, or matter whatever, for which remedy might be had at law against such debtors, in case all were taken by process served out of any court of this State, shall be answerable to their creditors separately for such debts — that is to say, the creditor or creditors of such debtors may issue process against them in the manner now in use; and in case any of such joint debtors being taken and brought into court, he or they so taken and brought into court shall answer to the plaintiff, and in case judgment shall pass for the plaintiff, he shall have his judgment and execution against such of them as were brought into court, and against the other joint debtors, named in the process, *Page 561 
in the same manner as if they had been taken and brought into court by virtue of such process; but it shall not be lawful to issue or execute any such execution against the body or against the lands or goods, the sole property of any person not brought into court (1 Ch. Pl., 214). But the practice of the courts in this State to which I have before referred is older than this statute, and may have been the practice also in that State before the enactment of it.
It had been further contended with much earnestness that the plaintiff is justly entitled to a judgment against all of the contracting parties on the other side, and that it might well happen in a case like this, that the one who had been out of the State and could not be served with process, was the only party among them responsible in damages for the amount demanded in the action, or, indeed, for any other amount. But that consideration never constituted any ground whatever for the long established rule of the common law that, in a joint contract, and not joint and several, entered into by two or more persons, they must all be made parties defendant in an action upon it, as is perfectly manifest from what I have before observed, that in the procedure in outlawry against such a party to the contract, the only remedy or mode of proceeding at common law in such a case, there is no judgment recovered against him by the plaintiff nor is it of any avail or advantage to him, except by the practice under it to warrant and authorize, upon the conclusion of it, the recovery and rendition of a final judgment in his favor, against the other parties to the contract. On the contrary, it was solely and exclusively founded on a rigid and imperative rule or principle of pleading which invariable required that all the parties to such a contract on both sides should be joined as plaintiffs and defendants, if living, in the writ and action upon it, and like all the rules of pleading at common law, it was, as a general rule, founded on good sense and sound reason. *Page 562